1834.

Dunn
v.
Dunn.

---

### DUNN vs. DUNN.

'The service of a subpœna upon a defendant in another state or country is irregular; and no proceedings can be founded thereon unless the defendant voluntarily appears, or stipulates in writing to accept such service as regular.

Where the court of chancery has jurisdiction of the subject matter of the suit, if a defendant who is beyond the limits of the state consents to waive the irregularity of the service of the subpœna, by a voluntary appearance, or by an agreement in writing to accept the service of the subpœna upon him as regular, he cannot afterwards object to the regularity of proceedings against him, founded upon such service.

Where a decree for a divorce was obtained by the husband upon a personal service of the subpœna upon his wife in the state of New-Jersey, and the complainant shortly after the decree married another woman who was ignorant of the irregularity in the obtaining of the divorce, the court permitted the defendant to come in and make a defence to the suit; but for the protection of the rights of the second wife, the decree was directed to remain in full force until the result of such litigation was known.

THIS was an appeal from an order of the vice chancellor of the first circuit, setting aside a decree for a divorce, on the ground of irregularity. The parties resided in the city of New-York, but the subpœna was served upon the defendant at Newark, in the state of New-Jersey, during a temporary absence there for the purpose of lying-in. The subpœna was personally served, and the affidavit of service was in the usual form, without expressing that it was served out of the state. The bill was taken as confessed; and upon an affidavit of regularity made by the solicitor, and the affidavit of the complainant required by the 105th rule, the usual order was ob-

April 1.

tained referring it to a master to take proof of the adultery charged in the complainant's bill. On the 15th of October, upon the master's report of the adultery, a decree for a divorce was made by the vice chancellor ; and a few days afterwards the complainant was married a second time. Subsequent to the marriage of the complainant, the defendant applied to the vice chancellor to set aside the decree, on the ground of irregularity ; and also on the ground that there had been a condonation of the adultery, by cohabitation with her by the complainant after knowledge of the adultery; and both before and after the filing of the bill. The defendant also alleged that she had been deceived, by the representations of the complainant that the suit for a divorce was merely colourable, and had been instituted in reference to the obtaining of money from the person with whom the alleged adultery had been committed. The affidavit of the complainant denied the alleged condonation. He also denied that he had deceived the defendant as to the proceedings in the cause. On the contrary, he swore that at the time of the service of the subpœna on the defendant, he informed her he was about getting a divorce and that it was necessary that the subpœna should be served upon her ; to which she replied she was willing he should get a divorce, and she was willing he should take any course if he would not expose her, or make the matter public. He also stated, in his affidavit, that after the decree and before his second marriage, he obtained a copy thereof under the seal of the court, which he showed to the defendant and read the same to her ; that she declared herself satisfied therewith, and said she was glad it had been obtained with so little trouble, and without making any noise. Several affidavits were read in favor of the application, and in opposition thereto, the details of which it is not necessary to state at length. But from the affidavits, it appeared that in March, 1832, the complainant was convicted and sentenced to the state prison for five years, and that he returned to New-York, where his wife was, the beginning of July, 1833, and continued to live with her until the fifth of August. That he charged her with having become pregnant during his absence, and that she left him and went to Newark, where she was delivered of a child on

1834.

Dunn
v.
Dunn.

the 27th of the same month. The vice chancellor made an order to set aside the decree, and all the orders and proceedings consequent upon the service of the subpœna on the defendant in New-Jersey, with costs, upon the defendant's causing her appearance to be entered in the cause. From this decree the complainant appealed to the chancellor.

*R. Mott*, for the complainant, cited *Van Hessen* v. *Shippenbeck*, (1 *Dick.* 140 ;) *S. C.*, (1 *Ves.* 395 ;) *Scott* v. *Hough*, (2 *Brown's Chan. Cas.* 212, 213 ;) *Bourke* v. *Ld. M'Donald*, (2 *Dick.* 587 ;) *Shaw* v. *Lindsay*, (18 *Ves.* 491, 496 ;) *Nichols* v. *Gwyn*, (1 *Sim. Rep.* 389 ;) 2 *Mad. Ch. Pr.* 158 ; *Hind's Ch. Pr.* 90 ; 1 *Moulton's Ch. Pr.* 201, 227 ; 2 *R. S.* 175 ; 1 *Hogan's Rep.* 79.

*J. Rhoades*, for the defendant, referred to 2 *R. S.* 179, § 69, 70, and *Idem*, 187, § 133.

THE CHANCELLOR. There is no foundation whatever for the charge, which has been very improperly inserted in the petition in this cause, that the solicitor for the complainant wilfully concealed the fact, in the affidavit of regularity, that the subpœna was served out of the state. From information derived from some of the most respectable solicitors in the city of New-York, within the first two or three years after I came into this court, I know they had been in the habit of considering a personal service of a subpœna out of the state as regular. I have also reason to believe my immediate predecessor, tacitly at leat, sanctioned this practice ; and that during his time many decrees were entered upon the usual affidavits of regularity, which affidavits were founded upon the service of subpœnas in the adjoining states. Moulton, in his practice, says, where the defendant resides abroad, service of a subpœna may be made personally. (1 *Moult. Pr.* 201.) He cites *Scott* v. *Hough*, (4 *Bro. C. C.* 213.) And a more recent writer on the practice of this court, whose work is now in the press, after an examination of the cases on this subject, seems to entertain the same opinion. (1 *Hoffman's Ch. Prac.* 111, *note* 1.) Whatever, therefore, may be the ultimate decision

of the court upon this question, there can be no doubt that the solicitor, at the time he drew the affidavit of service, and when he made the affidavit of regularity, honestly believed a personal service of the subpœna at Newark was regular, and according to the settled practice of the court. And if he entertained that belief, the affidavit would, of course, be in the usual form, in which form the place of service is not mentioned.

On the other hand, notwithstanding the affidavit of Mrs. Plum, I cannot believe the solicitor for the defendant wilfully misread the affidavit of the 12th of November to her, for the purpose of making her swear to something which she did not believe to be true. It is much more charitable to suppose that neither she or the solicitor at that time understood what the legal meaning of cohabitation was; and that they both understood that voluntary cohabitation meant nothing more than that they slept together in the same bed. There is the more reason to believe he made that mistake, inasmuch as his own client, in her petition, has sworn that the complainant cohabited with her on the night of the 27th of August, which must have been within a few hours of the birth of the child. I will not say that cohabitation under such circumstances is absolutely impossible ; but it is contrary to nature, and wholly improbable. I cannot therefore believe that the solicitor who drew the petition, or the defendant who swore to it, understood the term cohabitation according to its legal meaning as used in the statute. The defendant's solicitor undoubtedly mistook his duty in taking an affidavit, to be used in a cause in favor of his own client ; and more particularly in administering an oath to the deponent out of the jurisdiction of the state in which he was authorized to act as a commissioner. I think, however, we ought to presume it was done through ignorance, and not from an intention to do what he knew to be wrong. I shall therefore proceed to inquire whether the service of the subpœna on the defendant in Newark was irregular.

I am not aware of any reported case in which this question has arisen and been decided, in this state. In England the practice does not appear to have been definitively settled ; but from the reports it would seem the last decision was against

the validity of a service in a foreign country. In *Bourke* v. *Lord M'Donald*, in 1781, (2 *Dickens*, 587,) the subpœna was served in Scotland, and the defendant afterwards coming to England, he was taken on an attachment for not appearing. The master of the rolls was clear as to the regularity of the service of the subpœna; but Lord Thurlow doubting, it stood over several times, and finally the process was dropped. A similar doubt as to the right to serve a subpœna in a foreign country had been expressed by Lord Somers in *Cowslad* v. *Cely*, in 1698. (*Prec. in Ch.* 83.) The case of *Scott* v. *Hough*, before Lord Thurlow, in 1793, (4 *Bro. C. C.* 213,) was disposed of on a mere ex parte application, and upon a misapprehension of what had been the opinion of Lord Thurlow in *Bourke* v. *Lord M'Donald*. In the case of *Shaw* v. *Lindsay*, as reported in the first edition of Vesey, (18 *Vesey, jun.* 496,) it appears that Lord Eldon, in 1812, made an order ex parte for an attachment with proclamations upon the service of a subpœna in Scotland; the complainant's counsel citing *Bourke* v. *Lord M'Donald* and *Scott* v. *Hough* as authorities in support of the application. But in a note to a subsequent edition of Vesey, junior, it is said the order applied for in that case was finally refused, the cases cited proving to be misstated.[a] In *Nichols* v. *Gwyn*, (1 *Sim. R.* 389,) an order for an attachment was made by Sir Anthony Hart, vice chancellor, upon a service of the subpœna in Paris, and upon an agreement of the defendant's solicitor to appear. But in the case of *Fernandez* v. *Corbin*, (2 *Sim. Rep.* 544,) in which a similar order had been granted ex parte, upon the service of a subpœna in Guernsy, Sir Lancelot Shadwell, vice chancellor, upon hearing of counsel for both parties, discharged the order. In Ireland, it is settled that the service of the subpœna abroad is not sufficient to authorize any proceedings thereon. (*Creed* v. *Byrne*, *Hogan's R.* 79. *Lord Alborough* v. *Paton*, *Id.* 131.) But if the court of chancery has once acquired jurisdiction over the party by the service of original process within the jurisdiction of the court, or by his voluntary appearance, the decree, or any order in the cause, may be served on the defendant out of the jurisdiction. (*Idem*, 1.)

(a) See *Atkinson's Ch. Prac.* 24, and 1 *Molloy's Rep.* 240.

The statute in this state having provided a mode of proceeding, where the subject matter of the suit is within the jurisdiction of the court and the defendant is beyond its jurisdiction, so that he cannot be served with process, there can be no good reason why this court should extend its arm beyond the bounds of the state, for the purpose of acquiring jurisdiction over the person of the defendant. It is also wrong in principle that a defendant should, by the process of any court, be compelled to appear and answer to a complainant in another state, or country, in order to protect himself from the consequences of a personal decree founded upon such process. And the supreme court has recently decided, that in the commencement of a suit by the service of a declaration, under the statute, the declaration is in the nature of process to compel the defendant to appear and answer, and cannot therefore be served upon the defendant out of the limits of the jurisdiction of the court in which the suit is to be prosecuted. (*Ex parte Green* v. *Onondaga Common Pleas*, 10 *Wendell's Rep.* 592.) In all cases, however, where the court has jurisdiction over the subject matter of the suit, if the defendant who is beyond the limits of the state thinks proper to waive that objection by a voluntary appearance, or by consenting to accept as regular the service of process upon him at the place where he resides or is found, he cannot afterwards object to the regularity of the proceedings against him, founded on such service. But such agreement, to be binding, must by the rules of the court, be in writing. The vice chancellor was therefore right, in this case, in deciding that the service of a subpœna upon the defendant, at Newark, was not sufficient to warrant the entry of an order to take the bill as confessed for the want of appearance. And in an ordinary case, it would be a matter of course to set aside the proceedings consequent upon such service.

There are, however, some very peculiar features in this case, which induce me to think the manner in which the defendant has been admitted to come in and defend her rights, if she has any, is not that which is best calculated to do justice to all parties. The defendant does not state when she received notice that the divorce had been actually obtained.

But the complainant swears that he showed it to her, under the seal of the court, on the 16th of October, and before his second marriage ; and it appears that she took no steps to set aside the proceedings for nearly a month afterwards. This delay was probably not sufficient to make it the duty of the court to bar her of her rights, if she has any, by leaving the decree to stand as conclusive against her. But in the mean time the second wife has acquired rights, and from aught that appears, under an honest belief that the divorce of which the complainant had procured an exemplification, was perfectly regular to dissolve the matrimonial connection between the parties to the suit. If the defendant therefore had no legal defence to the suit at the time the decree was made, although there has been an irregularity, the defendant should not be permitted to bastardize the issue of the second marriage, if such there should be, or release the complainant from such second marriage, if he succeeds in obtaining a dissolution of the first. Such, however, may be the effect of setting aside the decree absolutely in the first instance. The defendant does not deny that she has been guilty of the adultery as charged in the bill. Probably, under the circumstances, she could not deny it in a petition which was to be sworn to by her. The whole defence, therefore, depends upon the question whether the complainant, with knowledge of the adultery, has forgiven the injury by sexual intercourse with her. The decree should then have been permitted to stand until it could be ascertained whether she had any valid defence. If it turned out that she had, the decree should then have been vacated and the bill dismissed. If she had not, then the original decree should have been continued in full force, for the protection of the rights of the second wife.

The order of the vice chancellor must therefore be reversed. And there must be a reference to a master to inquire and report whether the defendant has been guilty of the adultery charged in the bill ; and if she has, whether the complainant has forgiven the injury, either expressly or by a voluntary cohabitation with the defendant after knowledge of the act of adultery. And upon the coming in and confirmation of the master's report, if it appears that no adultery has been com-

mitted, or that there has been a condonation thereof, then the decree is to be set aside, and the bill dismissed, with costs, including the costs of this appeal. Otherwise the decree is to be and remain in full force and effect from the time the same was entered, on the 15th of October, 1833. The reference is to be made to Master Clark, and the proceedings are to be remitted to the vice chancellor. A commission may issue, under the direction of the master, and upon his certificate, to examine witnesses in the state of New-Jersey, if he shall deem it necessary.