## DOUGHTY *vs.* DOUGHTY.

1. It is competent for a court of equity, upon an allegation that a judgment is founded in fraud, to inquire whether the cause of action spread upon the record is wholly fictitious and groundless; and also, whether the plaintiff fraudulently withheld from the court pronouncing it, any fact which, if disclosed, would have shown he had no cause of action.

2. In order to relief from a judgment on the ground of fraud, the proof in demonstration of the fraud must be so clear and strong as to render it certain the plaintiff knew, at the time he brought his suit, he had no right of action, and was without expectation of obtaining judgment unless he was successful in depriving the defendant of an opportunity of making defence.

3. A judgment of divorce obtained in Illinois, declared void, on the ground that the cause of action on which it purports to be founded, was fabricated.

4. A judgment by a court of one of the states, divorcing a husband and wife domiciled in different states, is not entitled to extra-territorial recognition in case the party procuring it could have given the defendant actual notice of the suit, but refused or neglected to do so.

5. The right of every person accused, to have an opportunity to make defence, is secured by a rule of general law; a judgment pronounced in violation of it is not entitled to general recognition.

On bill, plea supported by an answer, replication and proofs.

*Mr. A. A. Clark* and *Mr. Cortlandt Parker,* for complainant.

*Mr. J. D. Bartine, Mr. H. M. Gaston* and *Mr. B. Williamson,* for defendant.

THE VICE-CHANCELLOR.

This is a suit by a wife against her husband, for divorce *a vinculo matrimonii* for both adultery and desertion. Preliminary to the main relief, the bill asks a decree declaring that a judgment pronounced by the Circuit Court of Whiteside county, Illinois, in a suit by the present defendant against the complainant, adjudging the marriage of the parties to be null and void for fraud and duress and want of consent by the husband, is a nullity, because it was procured by fraud, and also for want of jurisdiction over the person of the present complainant. Whether this court is bound to recognize this judgment as a valid adjudication against the complainant, respecting her matrimonial *status*, or not, presents the only question of difficulty in the case, for if it is, it is clear the complainant has no case, for the judgment finds she never was the lawful wife of the defendant; but if it is not, and a lawful marriage was contracted, then the admissions of the answer, showing that the defendant abandoned the complainant in the fall of 1866, went to the state of Illinois, and has ever since remained there, and has always since refused to recognize her as his wife, and that after procuring the judgment in controversy, he married another woman and has since cohabited with her as his wife, confess a state of facts which, if true, entitles the complainant to the relief she seeks.

The parties were married on the evening of the 8th of August, 1866, at the house of the complainant's father, in the village of Somerville, Somerset county—that being the birthplace and home of each, and where the complainant has lived all the days of her life—in the presence of her father, stepmother, sister, brother-in-law, two brothers, and a highly respectable gentleman of the village, besides the officiating clergyman, the venerable and distinguished Abraham Messler, D. D. They occupied the same bed that night. The defendant returned to his father's house the next day. He never visited the complainant again, except to announce his father had determined to send him to the west, and to bid her good-bye. In this interview he manifested a becoming love for the

complainant, expressed the deepest regret he was compelled to leave her, and promised to make an arrangement at once to have her join him in the west. On the 10th of September, 1866, a little over a month after the marriage, he went to the State of Illinois, and never afterward recognized the complainant or had any communication with her. The evidence is undisputed, that for a considerable period prior to April, 1866, the defendant had visited the complainant as a suitor almost daily, and, under a promise of marriage, had had sexual intercourse with her, resulting in the birth of two children shortly after the marriage. In November, 1868, the defendant commenced a suit in the Circuit Court of Whiteside county, Illinois, to annul his marriage, alleging in his bill of complaint, as his cause of action, that on the 17th day of August, 1866, he was enticed, by false pretences, into the house of the complainant's father, and detained there forcibly until the following morning, and that while so imprisoned there, although he absolutely and openly refused to consent to a marriage, and refused to stand up or join hands with the complainant, he was wrongfully and fraudulently declared to be the husband of the complainant, and she to be his wife, by a minister of the Gospel; that he never at any time had sexual intercourse with the complainant, and is not the father of the children to which she gave birth after the pretended marriage. The complainant was not notified of the pendency of this suit, and had no knowledge whatever respecting it, until long after its final determination. Although the defendant knew where she was, and where notice would be certain to reach her, no attempt was made to give her actual notice. The record shows the clerk of the court caused a notice to be published four times, at an interval of a week between each publication, covering a period of three weeks from the date of the first publication to the last, in a newspaper published in the county where the suit was pending, giving notice of the pendency of a suit for divorce. The record further shows the complainant did not appear to the suit, either in person or by attorney, but made default. Judgment was awarded October-

Doughty v. Doughty.

13th, 1869, declaring the marriage ceremony between the parties null and void, for fraud and duress and want of consent by the husband to the celebration of the marriage.

If it is possible to prove any fact by the oaths of credible persons, so fully and perfectly that it·must be accepted by the court as the truth, a lawful marriage between these persons, by the desire and with the full consent of both, must be considered conclusively established by the evidence in this case. All who were present at its celebration, except the defendant and one of the complainant's brothers, have testified, and been subjected to the most searching and exhaustive cross-examination; all the means provided by the law for detecting falsehood and testing the trustworthiness of human testimony, have been applied with masterly skill, and unless it can be assumed they have proved utterly abortive in this instance, and the witnesses were endowed with a cunning and possessed by a spirit of wickedness almost miraculous in their power, it must be admitted their evidence proves, beyond all doubt, that a lawful marriage was solemnized between these parties on the evening of the 8th of August, 1866, at the house of the complainant's father, in the village of Somerville.

The foundation of the defendant's action in the Illinois suit was non-consent by him to the marriage. The evidence produced in this cause shows he did consent, and that every actionable fact stated in his complaint in that suit was totally false. Has the complainant a right to impeach this judgment by showing it rests on a fabricated cause of action?

There can be no doubt that a court of equity has power to look into the judgments of other courts, and if it appears they are infected with fraud, to give relief against them. This power has been repeatedly recognized in this state. *Glover* v. *Hedges, Saxt.* 119; *Boulton* v. *Scott's Adm'rs*, 2 *Green's Ch.* 231; *Van Meter* v. *Jones' Ex'rs, Ib.* 523; *Powers' Ex'rs* v. *Butler's Adm'rs*, 3 *Green's Ch.* 465. And the power of the court to relieve against fraudulent judgments is not limited to judgments recovered in the courts of the same state, but may be exerted against judgments recovered in the courts of other

states, whenever they are sought to be made the foundation of an action or a defence. *Davis* v. *Headley*, 7 *C. E. Green* 123; *Pearce* v. *Olney*, 20 *Conn.* 544; *Dobson* v. *Pearce*, 12 *N. Y.* 165.

In *Moore* v. *Gamble*, 1 *Stockt.* 247, Chancellor Williamson said: "The court will grant relief against a judgment which is against conscience, which was obtained by fraud, or in any other way by which injustice has been done." And in defining what conduct on the part of a plaintiff will make it the duty of the court to interfere, he said, a plaintiff who brings his action when his adversary is out of the state, for the purpose of depriving him of an opportunity of being heard and making defence, commits a gross wrong and fraud, and in a case so gross, a court of equity will not stop to inquire whether or not the injured party may get redress in the court pronouncing the wrongful judgment, but in such a case the propriety of affording relief would be so manifest that the court would act without hesitation. In this case the court went into an inquiry to ascertain whether a judgment in attachment was founded on a just debt, or not. The same eminent Chancellor, in the subsequent case of *Tomkins* v. *Tomkins*, 3 *Stockt.* 514, declared, in the clearest terms, it was the duty of the court, when a judgment was assailed as fraudulent because not supported by a just cause of action, to look into the judgment, and if the charge was shown to be true, to give relief. His forcible statement and illustration of the doctrine are so exactly pertinent to the case in hand, that they may be quoted almost literally as the judgment of this court on this branch of the case. He says: "In a case like the present, of foreign attachment, where the proceeding is *in rem*, and the judgment is obtained without the knowledge of the defendant, and the proceedings are all necessarily *ex parte*, it would be hard, indeed, if this court could not interfere to protect a party against the fraud of the plaintiff. The propriety of the court's interfering in such cases is too obvious to require its being vindicated. But even in a case where a judgment has been obtained in the absence of a party, and

upon a hearing· entirely *ex parte*, this court will not try the merits of a case over again, where those merits have been *properly* submitted to the tribunal established by law to hear and adjudicate upon them. * * * If the plaintiff imposes a fictitious claim upon the auditors," (or the court,) " or a claim which has been satisfied, and for which the defendant has a receipt ; in fine, if he conceals from the auditors," (or the court,) " any fact which tends to show that his claim is not a valid one, he commits a fraud upon the absent party, against the consequences of which this court will protect him."

Under the authority of these cases, it is clear it is competent for this court, upon an allegation that a judgment is founded in fraud, to inquire whether the cause of action, spread upon the record, is wholly fictitious and groundless, and also whether the plaintiff fraudulently withheld from the court pronouncing it, any fact which, if disclosed, would have shown he had no cause of action ; but it is equally clear, where the merits of the case have been fairly submitted to the original tribunal, even on an *ex parte* hearing, the court will not, upon an allegation of fraud, enter upon a re-trial of the merits, and weigh, adjust and reconcile evidence to see whether or not, in its opinion, the original tribunal pronounced a correct judgment. The proof in demonstration of the fraud must be so clear and strong as to render it certain the plaintiff knew, at the time he brought his suit, he had no right of action, and was without expectation of obtaining a judgment unless he was successful in depriving the defendant of an opportunity of making defence.

Judgments in suits for divorce have been repeatedly adjudged void, on the ground that the cause of action set out in the pleadings was fabricated by the plaintiff. In *Borden* v. *Fitch*, 15 *Johns.* 121, a divorce granted by the Supreme Court of Vermont, at the suit of the husband, alleging desertion as the cause, was held to be invalid, it appearing the parties were living separate during the whole period of the alleged desertion, pursuant to a divorce *a mensa et thoro*, granted by the legislature of Connecticut. In *Leith* v. *Leith*, 39 *New Hamp.*

20, a divorce granted by a Circuit Court of Indiana, on the application of the husband, was held to be invalid, it being shown that an actual residence in Indiana was necessary, by its laws, to give a person a right to bring suit for divorce, and that though the plaintiff was physically present in Indiana, for the statutory period, he had not gone there to reside permanently, but merely to obtain a divorce. And in *Vischer* v. *Vischer*, 12 *Barb.* 640, a divorce granted by a Circuit Court of Michigan, at the instance of the husband, for desertion by his wife, was declared to be invalid, it appearing that for the whole period of desertion, the wife was living separate from her husband under a decree of divorce *a mensa et thoro,* pronounced by the Court of Chancery of New York. In each of these cases, on an allegation of fraud, the court made inquiry whether or not the judgment was founded on a valid cause of action, and finding it was not, pronounced it void.

I think the complainant has a right to impeach the Illinois judgment by showing that the cause of action on which it purports to rest was fabricated, and I am of opinion that it is clearly shown that it was fabricated. It must, therefore, be declared void against the complainant.

The other objection to the validity of this judgment raises the question, whether or not that great maxim of justice which declares no person can be lawfully condemned, nor be made to suffer, either in person, estate, or fame, without an opportunity of being heard in defence, applies to actions for divorce, and also to actions to settle the question of marriage or no marriage. It is an undeniable fact, the complainant did not have an opportunity to make defence to the foreign suit, and it is equally true the defendant had it in his power to give her such an opportunity, and refused to do it. He knew where she was, and that a notice sent to his father, or to any other of his relatives living in the same village where she did, for service on her, would have been sure to reach her, but all effort in that direction was limited to a publication in a local newspaper, where it was almost absolutely certain it would not come to her notice. The conviction

cannot be resisted that he sought a foreign jurisdiction to obtain a nullification of his marriage secretly, and to deprive his wife of an opportunity of meeting and disproving his accusations. His family bitterly opposed his attentions to the complainant, and his father had threatened to disinherit him if he married her; he was, therefore, assured of the sympathy and support of his family in any controversy he might have respecting the validity of his marriage. If it was true he was decoyed into the house where the marriage was solemnized, and there imprisoned while an atrocious outrage was committed against him, and also against law and decency, why, when he regained his liberty and was safe under the protection of his father, did he not instantly appeal to the law for redress and the punishment of the offenders at the place where the outrage was perpetrated, where all the proofs were, and where he would have had the aid and sympathy of a wealthy and influential family connection? It seems to me, if he had really suffered the indignities and outrage charged in his complaint, his sense of wrong would have been too deep to have permitted him, in the very flush of his indignation, to turn his back upon the conspirators, without so much as seeking, by a whisper, the aid of the courts for his protection and their punishment. According to the proofs, he did turn his back upon them and the scene of the outrage, sought a home in a distant state, and there slept uncomplainingly over his wrongs for over two years; and then, when he appeals to the law for redress, although he knows just where a notice of his suit will reach the woman who he charges has so deeply wronged him, he purposely refrains from giving her an opportunity to meet him face to face and answer his accusations. If he sincerely believed he had a just cause of action, he has unfortunately pursued just the line of conduct that an unscrupulous suitor, attempting to abtain an unmanly and fraudulent advantage of his adversary, would have adopted.

It will be observed this case does not raise the question, whether or not, where the parties to a suit for divorce are

domiciled in different jurisdictions, and the plaintiff does not know, and cannot, by diligent inquiry, ascertain the abode of the defendant, and cannot, therefore, give actual notice of his suit, the court can, by publication merely, acquire such jurisdiction over the person of the defendant as will enable it to pronounce a judgment, which will be entitled to be recognized, in external jurisdictions, to be of the class of "judicial proceedings" entitled to full faith and credit in each of the states by force of constitutional provision. But the proposition upon which the defence rests, is this : that where the parties are domiciled in different states, a husband or wife may, by publication of notice in a local newspaper, and without actual notice to the defendant, even when the plaintiff knows where the defendant resides, and has it in his or her power to give actual notice, procure a judgment annulling their marriage, which will be entitled to ·full recognition by the judicial tribunals of each of the states. There is an *ex parte* case, *Ditson* v. *Ditson,* 4 *R. I.* 87, (a suit for divorce by a wife against her husband, who was a subject of Great Britain, and had abandoned his wife and returned to England,) in which this question is very elaborately discussed, not, however, in deciding an issue properly raised in the suit, but apparently in vindication of the soundness of a judgment pronounced in another suit, which the Supreme Court of Massachusetts subsequently refused to recognize. *Lyon* v. *Lyon,* 2 *Gray* 368. While the court declare judgments in divorce cases, where jurisdiction over the person of the defendant is acquired by publication merely, without actual notice, are entitled to recognition in external jurisdictions, they are careful to add that the defendant must have such notice, actual or constructive, as the nature of the case admits of, the purpose of the notice being to banish the idea of secrecy and fraud, as well as to give to the persons out of the jurisdiction of the court, every possible chance, under the circumstances, of appearing to the *proceeding* and making defence. For many years prior to the promulgation of these views, it had been the practice of the Supreme Court of

Rhode Island, in divorce cases, *when* the defendant was non-resident, and his residence unknown, and it became known during the progress of the suit, and was within the United States, to continue the hearing until personal notice of it could be given to the defendant. It is obvious this case gives no countenance to the proposition of the defence. No such doctrine has yet been declared to be law by any tribunal whose opinions have been deemed worth preserving, and I presume never will be, so long as the lowest notions of justice can appreciate the flagrant injustice of condemning the innocent as guilty, without giving them a chance of manifesting their innocence, when it is within the power of the person seeking the judgment to do so. The other case, *Harding* v. *Alden*, 9 *Greenl.* 148, cited as an authority for the proposition of the defence, fully recognizes the necessity of notice to entitle a judgment to full faith and credit in other jurisdictions. The court say : " It appears that by the order of the court, a citation was served upon the defendant in person, and that a continuance was twice granted, to give him an opportunity to appear in defence. This shows a due regard to that principle of justice which gives the party accused the right to be heard."

There can be no doubt that every independent government is at liberty to prescribe its own methods of judicial process, and to declare by what forms parties shall be brought before its tribunals, but in the exercise of this power, no government, if it desires extra-territorial recognition of its acts, can violate those rights which are universally esteemed fundamental and essential to society. *Mackay* v. *Gordon*, 5 *Vroom* 286. The right to have a fair opportunity (such as the defendant can make effectual to his protection) to make defence against any charge, is secured by a rule of general law, resting upon what is esteemed, in the judgment of mankind, a principle of natural justice. A judicial sentence, pronounced in violation of this right, is not within the protection of the constitution, nor entitled to general recognition as valid. Judgments dissolving the marriage relation have been repeatedly

declared void for a violation of this right. Besides Borden *v.* Fitch, Lyon *v.* Lyon, and Vischer *v.* Vischer, already cited, I refer to *Bradshaw* v. *Heath*, 13 *Wend.* 408 ; *Dunn* v. *Dunn*, 4 *Paige* 425; *Irby* v. *Wilson*, 1 *Dev. & Bat. Eq.* 568. It is quite evident such would have been the result in *Nichols* v. *Nichols*, 10 *C. E. Green* 60, if the facts had warranted it.

No tribunal, so far as I am aware, has attempted to maintain the validity of judgments of divorce in all jurisdictions, when pronounced without actual notice to the defendant, where it was in the power of the plaintiff to give it, on the ground that such suits are proceedings *in rem*, and, therefore, notice is not necessary. Accurately speaking, a proceeding *in rem* is a proceeding against tangible property, and actual notice is dispensed with, on the theory that the owner is bound to know where his property is and what is being done with it. It is manifest this theory cannot be applied to the relation of husband and wife, especially where one abandons the other and refuses all intercourse.

For both reasons, the foreign judgment, in my opinion, is void against the complainant, and the proof of desertion for a much longer period than that fixed by statute, being undisputed, the complainant is entitled to a decree dissolving the marriage.

There being a prayer for alimony and maintenance, a reference will be ordered to ascertain the faculties of the defendant, and what, under the circumstances of the case, will be a reasonable allowance.