JEREMIE SCRIPTURE, Respondent, *v.* FANNIE E. SCRIPTURE, Appellant.

*Divorce — opening a judgment by default — effect of the remarriage of the plaintiff.*

Where, after judgment has been rendered by default in favor of the plaintiff, in an action brought for an absolute divorce, on the ground of adultery, the plaintiff, with knowledge that an application is about to be made to open such default, remarries, the fact of such remarriage is not a good reason for denying the motion for a new trial if the circumstances connected with the default would otherwise justify the granting of such application.

The circumstances connected with the absence of a material witness which will justify the party, in whose favor he would be called, in neglecting to prepare for, or to appear upon the trial of an action, and will justify the opening of a judgment, by default, of absolute divorce, considered by the court.

APPEAL by the defendant, Fannie E. Scripture, from an order of the Supreme Court, entered in the office of the clerk of Warren county on the 20th day of March, 1893, denying the defendant's motion to vacate a judgment entered against her.

*Edwin R. Leavitt,* for the appellant.

*J. M. Whitman,* for the respondent.

MAYHAM, P. J. :

This was an action brought by the plaintiff against the defendant for an absolute divorce on the ground of adultery. The adultery charged in the complaint was alleged to have been committed in April, 1877, with Edward La Fay ; also in December, 1886, with one T. Marshal Huntington ; also charged the defendant with living in adulterous intercourse from March, 1886, to March, 1887, with said Huntington at 437 Fourth avenue, New York. The complaint also charged adulterous intercourse between the defendant and Henry Wygant on or about the 1st of January, 1889, also on or about the 1st of January, 1890, at 437 Fourth avenue, New York.

The defendant in her answer admitted her marriage, denying all the allegations of adultery charged in the complaint, and charged the plaintiff with adulterous intercourse with several females at several different times and places, specifically designating the time of each alleged adulterous intercourse.

The answer also set up cruel and inhuman treatment by the plaintiff of the defendant, and failure and neglect on his part to support the defendant.

The issue was joined upon the above complaint and answer November 14, 1891. On the 30th of May, 1892, the plaintiff noticed the cause for trial at a Circuit and Special Term appointed to be held at Caldwell on the 13th day of June, 1892. On the last-mentioned day the case was called upon the calendar, and on its being so called Stearns, of counsel for the defendant, appeared and moved an adjournment and read an affidavit of Edwin R. Leavitt, one of the attorneys for the defendant, showing, among other things, that on the 6th day of June, 1892, defendant's attorneys wrote to Stearns of Glens Falls, requesting him to attend to

the postponement of the trial, and informing him why the defendant would not be ready for trial at the Circuit on the thirteenth, and requesting him to see the plaintiff's attorneys and ask them to consent to an adjournment of the case.

The affidavits also show that defendant's attorneys in New York, on the 10th of June, 1892, sent a telegram to Stearns inquiring if he had received affidavits for adjournment and requested an answer, to which Stearns replied, "Yes." In response to that, defendant's attorneys informed Stearns by telegram "they had sent papers." On the 14th of June, 1892, defendant's attorneys again telegraphed Stearns, in care of the clerk of the court, stating that they had forwarded affidavits of physician. The affidavit also disclosed that Dr. Huntington, one of the co-respondents charged in the complaint with having adulterous intercourse with the defendant, was absent and in Europe, where he had been for about two months, stating that he would not return in time to be a witness for defendant at the Caldwell Circuit, and that he was a necessary and material witness for the defendant on the trial of the action.

The affidavit also stated that the defendant was ill and unable to attend the court at which the case was noticed for trial, and that she was a necessary and material witness for the defendant. The counsel, in support of the motion to adjourn the case, also presented the affidavit of the plaintiff, setting forth her illness and inability to attend the Circuit at which the cause was noticed for trial; also the absence of Dr. Huntington and her inability to procure him as a witness; also the materiality of said Huntington as a witness on her behalf, as she was advised by her counsel, after stating what she expected to prove by him to her counsel, and that she could not safely proceed to the trial of the action without the testimony of Dr. Huntington; also the affidavit of Ebner Scripture, defendant's son, who resided with her at the time in New York, stating the illness of his mother and her inability to attend the trial at the Circuit; also the certificate of Dr. Courcoula, that he was the attending physician of the defendant, and that she was ill of rheumatism and unable to attend the Caldwell Circuit. This certificate was not sworn to, but its execution was acknowledged before a notary public. Counsel for the defendant also read an affidavit of

Edwin R. Leavitt substantially reiterating the facts contained in the other affidavits and his inability to attend the Circuit in person on account of pressing professional engagements.

The affidavits of Dr. Courcoula, verified on the 14th of June, 1892, and fully setting out the illness of the defendant and her inability to attend at such trial, were forwarded to Stearns, but not received in time to be used on the motion to postpone. The plaintiff, on said motion to postpone, gave no evidence, but the motion was denied by the learned trial court, and on the 13th of June, 1892, the case was heard before a jury, no one appearing on the part of the defendant, and the jury, after hearing testimony and being charged by the court, returned into court with a verdict in favor of the plaintiff for a divorce.

The stenographic report of the testimony on the trial was made a part of the moving papers on this motion, from which it appears that the plaintiff Scripture was sworn on his own behalf and swore that he was informed that his wife was guilty of adultery, and swore to having found a batch of letters purporting to have been written by T. E. Huntington, one of the co-respondents charged in the complaint. One of the letters was headed "My Darling little wife." The contents of these letters was excluded by the court. The witness was, however, permitted to swear that he had surrendered them to the defendant.

The answer of the defendant in this action was duly verified by her, and the affidavit upon which she asked to postpone the trial of this action contained an affidavit of merits on the part of the defendant.

The affidavits of the defendant used on this motion positively denied the adulterous intercourse charged in the complaint, and alleged cruel and inhuman treatment by the plaintiff of her while they lived together as husband and wife; also the affidavit of the co-respondent, Edward La Fay, denies positively the adulterous intercourse charged in the complaint, and the circumstances tending to prove adultery, proved upon the trial by the testimony of Nathan Henry Stafford.

The affidavit of the defendant also denies the testimony of Stafford that she ever admitted La Fay was in her room with her alone.

The affidavits also offered on the part of the defendant on this

motion, proved her character and conduct during all the time of her residence in New York to have been exceptionally good, and also tend to prove cruel and inhuman treatment on the part of the plaintiff towards her while they lived together as husband and wife at Glens Falls and Sandy Hill.

The affidavit of Dr. Huntington, read on this motion, denies all the allegations of adultery between him and the defendant in the complaint alleged, also denies proof that any letters were ever written by him or found in the possession of defendant as sworn to by the plaintiff on the trial.

The plaintiff offered in evidence the affidavits of several witnesses tending to prove his good moral character and character for truth. The case shows that on the trial of this action at the Circuit, after the default was taken, counsel for the defendant notified the counsel for the plaintiff that a motion would be made to open the default. It appears from the record that the judgment was entered on the 18th of June, 1892, and the affidavit of the plaintiff discloses that on the 2d day of July, 1892, the plaintiff was married to Abbie Hale of Norwood, St. Lawrence county.

I am clearly of the opinion that upon the facts disclosed on this motion, the defendant excused her default and unless the subsequent marriage of the plaintiff furnishes a reason why such default should not be opened the defendant should be permitted to try this case upon the merits. The evidence on this motion discloses that the defendant in her answer and in her affidavit to postpone the case swore to merits.

The evidence also shows on this motion, and the court cannot fail to see, that Dr. Huntington was a necessary and material witness for the defendant on the trial of this action, and that without his testimony she could not safely have proceeded to the trial, as she swore in her affidavit on the application to postpone the trial of the cause.

That being so, she had a right to assume that, as matter of legal justice, the trial would be postponed, and hence that she would not be required to prepare for trial in the absence of so material a witness whose testimony, as appears from the evidence on this motion, could subsequently, and within a reasonable time, have been procured. Nor do we think the announcement upon the trial that the plaintiff would not introduce evidence of the alleged adulterous

intercourse with Huntington, put the case in such a position that the defendant should have been forced to trial. She had alleged recriminatory adulterous acts on the part of the plaintiff, and in her affidavit she swears that she expects to prove such acts by the testimony of Huntington.

He was, therefore, necessary and material as a witness to prove her affirmative defense even though no evidence was offered of adulterous intercourse with him. Whether the defendant sought affirmative relief and asked for an affirmative decree dissolving the marriage on her part, was immaterial, as the adulterous intercourse charged in the answer, if proved, would have amounted to a good defense in this action. (*Smith* v. *Smith*, 4 Paige, 432.)

There was no evidence offered by the plaintiff on the motion to postpone the trial calculated to impugn the good faith of the application to postpone, and the case as it was presented proved that the defendant was a necessary and material witness herself, was in such delicate health as to make her attendance upon the court at that time practically impossible, and that fact standing undisputed, with the additional fact of the materiality of the testimony of Huntington, and the defendant's inability to procure his testimony, furnished a clear and unquestioned legal right on her part to have the trial of the case postponed. And the learned trial judge on this motion so holds, but the embarrassing question in this case grows out of the fact that the plaintiff, subsequent to the entry of this decree, intermarried with, what we must presume an innocent person, wholly ignorant of the facts upon which it is sought to open this decree and permit a trial of the issue in this case.

The haste with which the plaintiff married the second time involves these two women in this unfortunate complication, and the learned judge at the Circuit, and at the Special Term, when this motion was heard, held that in determining between these two innocent persons, the last wife was entitled to the protection of the court.

If, as we have seen from the proof on this motion, the defendant was entitled, as matter of right, to have her default opened, and to be permitted to try this action, that right existed at the time of the perfecting of this decree. That being so, no subsequent act of the plaintiff should deprive her of the benefit of that right.

The defendant's attorney was notified of the decree on the 22d of June, 1892, and immediately on the twenty-third notified plaintiff's attorney that he would move to open the decree, so that the plaintiff, through his attorney, was not ignorant of the fact at the time of his alleged marriage, of the defendant's purpose to move to open the decree. With this knowledge and before the defendant had, under the circumstances in this case, a reasonable time to prepare and serve motion papers, the plaintiff, by an act for which the defendant is in no way responsible, enters into a second marriage, and now seeks to shield himself from a trial of this case by such marriage. If, as we think, and as seemed to have been held by the trial judge, this motion should have been granted but for that second marriage, we can see no good reason for depriving the defendant of that right by an act over which she had no control and for which she was in no way responsible.

The court of equity has exercised the power of opening a decree of divorce, and letting in the defendant to defend, in cases which would seem to appeal less strongly for such relief than in this case.

In *Dunn* v. *Dunn* (4 Paige, 425), where the parties resided in this State, but the defendant was temporarily absent in another State, where the subpœna was personally served upon her, to which she made no answer, and the bill was taken *pro confesso*, decree entered against her, and her husband entered into a second marriage, the court after such marriage set aside the default and allowed the defendant to come in and defend, allowing the decree to stand until the trial and determination of the issue between the plaintiff and defendant, and provided in the order that if the defense was sustained the decree should be set aside and the bill dismissed; but if the defendant was beaten the decree should stand in full force for the protection of the second wife. We think the rights of all the parties in this action would be best subserved by making a similar order in this case. The order of the Special Term should be so modified as that the defendant may be permitted to come in and defend in this action, on payment to the plaintiff of the term fee and witnesses' fees for the term at which the decree was taken and ten dollars ($10) costs of this motion, and the decree entered in this action to stand until the final determination of the action, and the subsequent marriage is so far upheld as that the plaintiff's

cohabitation with the second wife, from the time of his marriage to her until the time of the determination in this action, shall not be treated as adulterous intercourse for the purpose of this action.

Let an order be entered accordingly.

PUTNAM and HERRICK, JJ., concurred.

Default opened on payment of term and witness' fees and ten dollars costs. Judgment to stand until final determination of action.