SIGMOND DRINGER

*v.*

THE RECEIVER OF THE. ERIE RAILWAY.

1. While courts of equity have no authority to sit in judgment on the lawful acts of other tribunals, or to examine their acts to see whether they, in the exercise of their powers, have committed error or not, their power to annul a judgment or decree which has been procured by fraud is undoubted, whether such judgment or decree be the sentence of a tribunal standing above or below them.

2. But in such case the fraud, in order to confer jurisdiction, must consist in something extrinsic or outside of the matter which was actually tried, or so in issue that it might have been tried, in the suit in which the judgment or decree assailed was entered.

3. The only remedies to which an injured party can resort for the redress of wrongs done or for the correction of errors committed in the trial of a cause, are such as are afforded by a direct appellate proceeding, either in the court of original jurisdiction or in the proper court of review.

4. In order to justify a court of equity in annulling a judgment or decree on the ground of fraud, it must be made clearly to appear that the judgment or decree has no other foundation than the fraud charged, and that if there had been no fraud, there would have been no judgment or decree.

On hearing on demurrer.

*Mr. Cortlandt Parker*, for demurrant.

*Mr. William Prall* and *Mr. Thomas N. McCarter*, for complainant.

VAN FLEET, V. C.

The defendant demurs to the complainant's bill for want of equity, and the question which this condition of the pleading presents is whether, taking every fact set forth in the bill to be true, a case is made which entitles the complainant to the relief he asks. The object of the bill is to obtain relief against a decree entered in this court on the mandate of the court of errors

and appeals. This relief is asked on the ground of fraud, the charge of the complainant being that the decree against which he seeks relief was procured by fraud, and that if there had been no fraud, there would have been no decree. *The decree assailed was made in a suit brought by the present defendant against the present complainant. Hugh J. Jewett, in 1876, as receiver of the Erie Railway, brought a suit in this court against Sigmond Dringer, to recover the value of a large quantity of waste material, which it was alleged Dringer had obtained by fraud. Dringer was accused of having obtained from the employees of the receiver, under pretence of purchases, large quantities of waste material, far beyond the amounts actually purchased, and also that, under the pretence of purchasing one class of material, he had possessed himself of another class, superior in quality and value to that actually purchased, thus defrauding the receiver both in the weights and value of the material obtained. Dringer, by his answer, denied all the frauds charged against him, and this court, on the final hearing of that cause, although entertaining painful doubts touching the honesty and fairness of many of the transactions charged to have been fraudulent, felt constrained, for the want of a sure conviction of the truth of the evidence mainly relied on to establish the fact of fraud, to dismiss the complainant's bill. *Jewett* v. *Dringer, 2 Stew. Eq. 174.* On appeal, the decree of this court was reversed, the court of errors and appeals being unanimously of opinion that the frauds charged against Dringer were proved beyond a reasonable doubt. *Jewett* v. *Dringer, 3 Stew. Eq. 291.* It is the decree which was made to carry this decision into effect that is assailed by the bill now on trial.

The court of errors and appeals, in its opinion, declared that the frauds charged were established by six different and distinct classes of proof. As the frauds on which the present bill rests consist in a charge that a certain book was fraudulently altered after it was received in evidence, thus making it furnish forged evidence of fraud, and that the effect of certain other evidence was so artfully and ingeniously misrepresented, on the argument before the court of errors and appeals, as to constitute a fraud on

the court, it becomes necessary to state these different classes of proof in some detail, in order that it may be seen whether or not the decree in question is the direct product of the frauds alleged, and has no other foundation ; for I take it to be entirely clear that unless the bill shows plainly and distinctly that but for the frauds alleged there would have been no decree—in other words, that the frauds alleged produced the decree—the complainant has no case. These different classes of proof will be stated in the order in which they appear in the opinion of the court. The first class consisted of evidence showing that Dringer had on hand, when this court took possession, by the appointment of a receiver, of the waste material found in his possession, over four millions of pounds of material in excess of the quantity that his books showed that he had purchased. The second class consisted of Dringer's acts and declarations. The court found, as facts satisfactorily proved, that Dringer had given bribes to the receiver's employees ; that he was habitually present at Susquehanna when his material was weighed and loaded, and that he assisted both in weighing and loading it ; that he sometimes had his material loaded at night, or out of business hours ; that when at Susquehanna he put up at the house of the weighmaster, with the members of whose family he was on very intimate terms, and to some of whom he made presents ; and that in talking of his business relations with the receiver he boasted that he was in with the right parties; they were his friends and would stand by him. The third class consisted of evidence showing the size of the loads which were loaded for Dringer at Susquehanna, and the quality of the material of which his loads consisted. The fourth class demonstrated, to the satisfaction of the court, that although material of the same kind was sent to Dringer from both Jersey City and Susquehanna, and in cars of the same capacity, yet that it was almost invariably the fact that the cars sent from Susquehanna contained a much less quantity of material than those sent to him from Jersey City. I will describe the fifth in the language of the opinion of the court. It " is made up of several instances wherein the weights of car-loads, as set down in the vouchers from Susquehanna, are shown

Dringer *v.* Receiver of Erie Railway.

to be less than the true weights, as ascertained by Dringer by reweighing the loads for himself, when received by him at Paterson. These instances are found in a small weight-book kept by Dringer, which, after being offered and marked as Exhibit 112 for the receiver, before the vice-chancellor, appears to have been mislaid, so that the instances themselves were not brought to his notice in the argument before him." The sixth and last class consisted of evidence showing that, almost invariably, car-loads of materials sent to Dringer contained a less quantity of material than cars of the same capacity, containing the same kind of material, sent to other persons. The court, in epitomizing the evidence of this class, say that " in August, 1875, twenty car-loads were sent to Dringer, at Paterson, and three car-loads to a party at Jersey City. The average weight of Dringer's loads, as put down in the vouchers, is nineteen thousand two hundred and ten pounds. The average weight of the others is twenty-four thousand six hundred and seventy-five pounds—a difference in Dringer's favor on each load of about two and a half tons." And the court, in giving another example furnished by this class of the evidence, say that between March 5th, 1875, and February 24th, 1876, " there were sent to Dringer, from the same shop, one hundred and ninety-two loads, of which the average weight of each load, as set down in the vouchers, is nineteen thousand three hundred and one pounds. During the same period there were sent, from the same shop, to other parties in Jersey City and Paterson, twenty-nine loads, of an average weight to each load of twenty-four thousand nine hundred and sixteen pounds—a difference in Dringer's favor, on each of the one hundred and ninety-two loads, of five thousand six hundred and fifteen pounds, or something over two and a half tons per load." The court were of opinion that this last class of the evidence established, beyond a reasonable doubt, the fact of fraud, both in the weights and the quality of the goods.

These are the facts on which the decree assailed rests. Whether or not the evidence in support of them is sufficient to demonstrate their truth, or whether it has been rightly or wrongly understood or interpreted ; in short, whether these facts are true or

false, are questions with which this court has nothing whatever to do. They have been found to be true by the court of errors and appeals, and that finding must be accepted by this court as an unimpeachable finality. The judgments of the court of errors and appeals cannot be reviewed by this court. The position of the two tribunals towards each other is directly the reverse—that court has authority to review and reverse the judgments of this court, but the only thing this court can do respecting the judgments of that court is to carry them into effect. That court not being a court of final process, a judgment pronounced by it, in a cause taken up by appeal from this court, is sent here to be carried into effect. And this court, in performing that duty, is required to confine itself strictly within its alloted sphere. It must not attempt, in any way, to evade, impede or defeat the command of the superior tribunal. *Jewett* v. *Dringer, 4 Stew. Eq. 586.* And so rigorous is the rule in this regard that if this court gives effect to the judgment actually pronounced by the court of errors and appeals, but not to the judgment entered on its record—the judgment having been erroneously entered—the action of this court will be reversed. As recently expounded, this is the rule which governs in such cases : "Like those of all other judicial tribunals, the records of this court [namely, the court of errors and appeals], kept under its own supervision, must be taken as the infallible exponent of its mind, and as in every respect being correct. It is not alterable, except under its own authority." *Tuttle* v. *Gilmore, 15 Stew. Eq. 369.* This court has, however, an original, inherent and independent jurisdiction to give relief against fraud, whether it be perpetrated by means of a contract, or a judgment or decree. While it has no power to sit in judgment on the lawful acts of other tribunals, and no jurisdiction to try their acts, to see whether they, in the exercise of their rightful powers, have committed errors, either of law or fact, yet its power to give relief against a judgment or decree, which has been procured by fraud, whether it be thesentence of a tribunal standing above or below it, is beyond all question. *Boulton* v. *Scott, 2 Gr. Ch. 231 ; Reeves* v. *Cooper, 1 Beas. 223 ; Vaughn* v. *Johnson, 1 Stock. 173 ;*

*Stratton* v. *Allen,* 1 C. E. Gr. 229 ; *Doughty* v. *Doughty,* 12 C. E. Gr. 315.

As already stated, the decree in question is assailed on two grounds. First, it is alleged that a certain piece of documentary proof, put in evidence by the receiver, in his suit against Dringer, was altered by Dringer's clerk, by the procurement of the receiver, after it had been received in evidence, so as to make it furnish forged evidence of fraud. The pith of the bill on this point is contained in the following averment :

"And your orator charges that the last three items, on the first page of Exhibit 112 for the complainant, were entered long after the other items were entered thereupon, and after the book had been offered in evidence, and were made for the purpose, as your orator believes, of defrauding your orator, and misrepresenting him in the court of errors and appeals, and in pursuance of a conspiracy entered into between Mills Green and the receiver to ruin and destroy your orator and his business."

It is more difficult to describe, with brevity and precision, the other fraud charged. The charge runs through many pages of the bill, and is made in a variety of forms, and with much verbiage and argumentation. The substance of it, however, is, as I understand it, that the counsel of the receiver, in the production of the proofs, and by their subsequent collocation and classification for argument, so ingeniously and artfully arranged them as to conceal the real truth, and to impress upon facts, which were innocent in themselves, and would have so appeared if the whole of them, with their connections and surroundings, had been put in evidence, an appearance of fraud, thus misleading and deceiving the court of errors and appeals. The last ground will be considered first.

Stated plainly, it will be observed that the last charge amounts to this : that the receiver, in trying his case, put in evidence such facts or such parts of the facts of the case as he thought furnished proof of fraud, and left out such as he thought had an opposite tendency, and that his counsel, in the preparation of the proofs for argument, so arranged them as to make the evidence upon which he relied to demonstrate the fact of fraud as

potent and persuasive as it could be made. But there is nothing in this which, according to the established rules governing legal contests, can be regarded as unfair, much less as fraudulent. The receiver and his counsel have done nothing which is not done in every case which is skillfully and thoroughly tried. The trial of a cause is an open contest, where each party is at liberty to exercise, in the face of his adversary, and according to the established methods of procedure, the utmost skill, learning and ingenuity that he can bring to his aid, to convince the court that he is entitled to its judgment—whether, according to the real right of the case, he is entitled to its judgment or not. And a judgment thus once obtained in a court of last resort must stand forever. It is irreversible. Whether so in fact or not, it speaks, as between the parties, absolute verity. It is a self-evident truth that human tribunals can only administer justice imperfectly; even when they do their very best, the results obtained are often only approximations to perfect justice. There are wrongs and misfortunes, arising from casualties and the imperfection of human institutions, against which no human law can give protection. Radical differences of opinion, respecting questions both of law and fact, often exist, not only between courts equally learned, wise and conscientious, but sometimes among the judges of the same court. A condition of facts which to one mind furnishes almost conclusive evidence of fraud, will to another seem scarcely sufficient to support a strong suspicion. Where a litigant has had his day in court, and been afforded the opportunity which the law secures to every litigant to meet the case made by his adversary, and to overthrow it by proof and argument, and judgment passes against him, if he believes that injustice has been done, he has a right to have such judgment reviewed by such legal method as may be appropriate to the redress of the wrong or error of which he complains. He may sue out a writ of error, apply for a new trial or rehearing, or take an appeal, but he cannot maintain a bill in equity to retry the case on its merits, or retry any of the questions settled by the judgment, on the ground that the judgment is a fraud because it is contrary to the real truth or right of the case. The

·Dringer v. Receiver of Erie Railway.

judgment may rest on perjured testimony, or on a forged instrument, yet if the defendant has had the opportunity given to him by the law to show that the testimony was false or the instrument was forged, he stands irretrievably concluded by the judgment, unless he can procure it to be reversed by a direct appellate proceeding. It is certain that in such a case he has no remedy in equity. *Vaughn* v. *Johnson, 1 Stock. 173 ; Stratton* v. *Allen, 1 C. E. Gr. 229.* The rule upon this subject is settled. Chief-Justice Shaw stated it as follows, in *Greene* v. *Greene, 2 Gray 361:* "The maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, proof of fraud is not again admissible. The party is estopped to set up such fraud, because the judgment is the highest evidence, and cannot be controverted." The rule, as thus stated, has been approved by the supreme court of the United States, in *United States* v. *Throckmorton, 98 U. S. 61,* where that court, speaking by Mr. Justice Miller, said: "The acts for which a court of equity will, on account of fraud, set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds extrinsic and collateral to the matter tried by the first court, and not to a fraud in the matter on which the decree was rendered." And Chancellor Williamson, in *Tomkins* v. *Tomkins, 3 Stock. 515,* said: "Even in a case where a judgment has been obtained in the absence of a party, and upon a hearing entirely *ex parte,* a court of equity will not try the merits of the case over again, where the merits have been properly established by law to hear and adjudicate upon them." These considerations render it entirely clear, as I think, that there is nothing in the second or last ground stated in the bill which would justify this court in annulling or changing, in any respect, the decree in question.

There can be no doubt that the first ground stated in the bill imputes to the defendant in this action a fraud of the most iniquitous character. He is charged with both corruption and forgery.

The allegation of the bill is that the defendant, by corrupt means, procured an employee of the complainant to alter a book, after it had been put in evidence, so as to make it furnish forged evidence of fraud. Now, while I think it would be difficult to imagine anything more detestable in the way of fraudulent conduct or more dangerous to the safe administration of justice than the fraud here charged, still I also think it must be admitted that this court is powerless to do anything by way of correction, punishment or redress of such fraud, in this case, unless it is clearly shown than the decree assailed is the product of such fraud, and has no other foundation. A court of equity may unquestionably annul a judgment or decree which has been obtained by fraud, but, in order to justify such an exercise of power, it must be made clearly to appear that the judgment or decree has no other foundation than fraud ; in other words, it must be made to appear that if there had been no fraud, there would have been no judgment or decree. An attempt to exercise a wider or more liberal jurisdiction, in cases of this class, would, it will be perceived, necessarily enlarge the jurisdiction of courts of equity so as to make them, practically, courts for the review of the judicial acts of other tribunals, and not tribunals with just sufficient power to redress frauds by undoing what fraud has done. Mr. Wells, in his treatise on *Res Adjudicata* § *499*, states the rule on this subject as follows: " Fraud vitiates everything, and a judgment equally with a contract; that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument ; for, in general, equity will not go again into the merits of the action, even for the purpose of detecting and annulling fraud." But neither precedent nor argument is necessary. A simple statement of the ground upon which jurisdiction in such cases rests shows that, unless the decree assailed is shown to be the sole and direct product of the fraud charged, this court has no authority whatever either to annul or change it, for its jurisdiction is unalterably limited to the simply undoing of what fraud has done. It is, therefore, clear that, if this decree has any other foundation than the fraud

here charged, this court, even if convinced that the decree is unjust according to the real right of the case, cannot disturb it.

The court of errors and appeals simply found the fact of fraud; they adjudged that Dringer had, by fraudulent means, obtained a large quantity of waste material, for which he should be required to pay; but they did not attempt to fix the extent of his frauds or the value of the material thus obtained, but referred that matter to a master. The master was at liberty to hear proofs. A large mass of testimony was taken respecting the alleged alteration of Exhibit 112. If that book was altered, as the complainant charges it was, the alteration could do him no harm, except as it augmented or strengthened the force of the proof of fraud. On the accounting he had a right to prove, if he could, that the entries, which he says are forgeries, were so, and if he demonstrated that fact to the satisfaction of the master, he would relieve himself from all liability for the value of the material, which he says the entries falsely show that he had obtained.

The bill does not allege that the master charged him with the value of the material which he says was fraudulently entered against him. In the absence of such an allegation, it must be taken as true that he was not charged with this material. Hence, it is obvious that the only injury he sustained by the fraud was in the added force which the forged entries gave to the other proof of fraud. If, therefore, it appears that there was other proof in the case sufficient to establish the fact of fraud, so that without the forged entries the same result would have been reached and the same judgment would have been pronounced, then it will necessarily follow that the decree in question is not the sole product of the fraud here charged, but that it stands on an independent foundation, entirely aside from the fraud here charged. If this is so, it is plain that the decree cannot be disturbed, and that this court has no power to touch it. In suits of this kind the court cannot give relief in a doubtful case. In the language of Chief-Justice Marshall, "the equity of a complainant," to entitle him to relief in such a case, "must be free from doubt." *Marine Insurance Co.* v. *Hodgson, 7 Cranch 332* The

evidence in support of the decree, as understood, classified and estimated by the court of errors and appeals, has been already stated in some detail. It need not be repeated. It will be remembered that the court said that the last, or sixth class, was sufficient of itself to establish the fact of fraud beyond a reasonable doubt. In my judgment, it is impossible for any one to read the opinion of the court without being fully convinced that, if the alleged forged evidence had constituted no part of the proofs in the case, the court of errors and appeals would have pronounced exactly the same judgment that they did pronounce; in other words, without being fully satisfied that the judgment of the court of errors and appeals does not rest upon the alleged forged evidence as its sole foundation. But it is not necessary to go to this length; a serious doubt on this point would, in my judgment, be fatal to the complainant's claim. This court has no power to annul the decree of a superior tribunal, except it be clearly shown that the decree has no other foundation than fraud.

The litigation between these parties has already extended over a period of more than ten years. More than five years prior to the filing of the bill now under consideration the present complainant applied for leave to file a bill asking this court to review the decree assailed in this suit. *Jewett* v. *Dringer, 4 Stew. Eq. 586.* His application was based on the same matters set up in his present bill. He subsequently attempted to litigate the same matters on the accounting, and his bill in this case alleges that the decree made by this court, on the accounting, is now pending, on his appeal, in the court of errors and appeals. The litigation has certainly assumed forms sufficient and occupied time enough to enable the complainant to obtain all the justice he is entitled to. Private interests, as well as the public good, would seem to require that the litigation should come to an end. The language used by Mr. Justice Miller, in *United States* v. *Throckmorton, supra,* should, I think, be repeated, with emphasis, in this case. He said: " There are no maxims of the law  *  *  *  of more value in the administration of justice than the two which are designed to prevent repeated litigation between the same parties

in regard to the same subject of controversy, namely, *Interest rei-publicæ ut sit finis litium,* and *Nemo debet bis vexari pro una et eadem causa."*

For these reasons, I think, the demurrer must be sustained, with costs.