Anton Hirschman died May 19th, 1920, intestate, seized of two adjacent parcels of land in Bayonne. He had lived *Page 552 
with his wife in a dwelling on one of the tracts nearly fifty years. His wife predeceased him a few months. He died childless. His heirs-at-law and next of kin were the children and grandchild of three deceased sisters. The defendant Warren Ferris, of North Bergen, Hudson county, is the only child of his sister Julia. The complainants Charlotta E. Ostrom, of Johnson City, near Binghampton, New York, is a daughter; Frank B. Rieber, of Benton Harbor, Michigan, is a son, and George A. Rieber, of Binghampton, New York, is a grandson of his sister Anna Maria, and the other complainants Frank C. Steffens, of Charleston, South Carolina, and Marie W. De Bussey, of Baltimore, Maryland, are children of his sister Fannie. When Hirschman died, Ferris, the only nearby relative, pretended and represented himself to be the only next of kin and heir-at-law of his uncle, and took out letters of administration on his estate. Charlotta M. Keffer, daughter of Daisey Hadlick, also pretended and claimed that her mother, then deceased, who had been raised in the Hirschman household, was the adopted child of the deceased. Mrs. Keffer also was reared as a member of the family. Within the week of the death of Hirschman, Ferris and Mrs. Keffer composed their pretentions and agreed, in writing, to divide the estate, share and share alike, and accordingly divided the personal property, each taking $1,384.09. They took possession of the real estate and as only heirs-at-law of Anton Hirschman conveyed it to the Consumers Coal and Ice Company, by deed dated October 5th, 1922, for $21,000, and they divided that, too, and squandered most of it. The Consumers Coal and Ice Company was not satisfied with the representations of exclusive kinship by Ferris and Mrs. Keffer, so, after it had entered into an agreement with them to purchase the previous March, it, through its attorneys, retained to examine and pass upon the validity of the title, filed a bill in the name of Ferris and Mrs. Keffer to quiet the title as against the claims of, inter alia, "Anton Hirschman, his heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in *Page 553 
right, title or interest," and after process and service by publication, and following the usual procedure, a final decree was entered September 21st, 1922, declaring and decreeing, interalia, "the defendant Anton Hirschman, his heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest * * * and each of them, have no estate, interest in or encumbrance upon said lands and premises, and so far as relates to any claim therein by or on behalf of any of the hereinbefore-mentioned defendants, the title of the complainants of, in and to the said lands and premises and every part thereof is hereby determined, fixed and settled and declared to be good." Fortified by the decree the Consumers Coal and Ice Company took title. Shortly afterwards the complainants herein, the heirs-at-law of an undivided two-thirds interest in the lands, learned of their inheritance and the suit and decree, and thereupon filed this bill against Ferris and Mrs. Keffer and the Consumers Coal and Ice Company to set aside the decree as fraudulent and to restore to them their rights. The bill sets out the history just related and charges that Ferris and Mrs. Keffer knew that Ferris was not the sole heir-at-law of Anton Hirschman, and that the mother of Mrs. Keffer was not the adopted daughter of Hirschman, and that they knew the complainants and their kinship to Hirschman and their whereabouts, and that the decree was procured by their false allegations and perjured testimony as a result of a conspiracy entered into by them to defraud the complainants of their inheritance. Their answer, in effect, is that they were innocent of any intentional wrong-doing. The Consumers Coal and Ice Company is charged with notice of the fraud, and it answers that it is an innocent purchaser for value.
There is no question as to the culpability of Ferris and Mrs. Keffer. Their professed innocence of intentional wrong-doing is beyond credence. The proofs leave not the shadow of doubt that both knew that Anton Hirschman had sisters and that the sisters had children — they met some of them, and *Page 554 
knew where to find all of them if they cared to look. Ferris knew it to be false when he swore in his affidavit annexed to the bill to quiet the title, "that he, the said Anton Hirschman, died on or about the 19th day of May, 1920, intestate, leaving me, this deponent, as I believe, his only heir-at-law," and he knew it to be false when he swore in the deposition in support of the bill and upon which the decree was entered "I never heard of any brothers or sisters [of Anton Hirschman] except my mother." It is impossible of belief that never had he heard his mother speak of her sisters. She and her sister, Mrs. Rieber, lived in the same town, Binghampton, and he and his mother visited her, and Ferris' wife attended Mrs. Rieber's funeral, and sent photographs of herself and daughter to the complainant Frank B. Rieber, and Ferris corresponded with him by mail. And the same censure goes to the depositions of Mrs. Keffer that "he [Hirschman] never had any brothers or sisters as far as I ever knew except his sister, Julia Ferris" (the mother of Ferris). She was a member of Hirschman's family, and knew. Steffens, one of the complainants, visited his uncle Anton occasionally and she met him; she had his address and wired him the news of Hirschman's death, and at the time of the funeral spoke of his absence and that of other relatives living in Binghampton. That Ferris and Mrs. Keffer represented themselves to be the sole owners of the estate, when, in fact, they were not; they admit and offer to make restitution of what is left, but that they boldly conspired to cheat the complainants and corruptly procure the decree is proved to the point of conviction, and the Consumers Coal and Ice Company concedes this in their brief.
A decree setting aside the false decree only as to Ferris and Mrs. Keffer, of course, will not bring the relief desired. The more troublesome question is, Is the Consumers Coal and Ice Company chargeable with the fraud and accountable for the property? Its defense is that it is an innocent purchaser for value, a status which, if established, does not give it a title superior to that of the complainants, but simply induces equity not to intervene. To persuade the court not to *Page 555 
restore to the complainants their estate the company must show itself blameless of responsibility for the fraud — that is, it must appear that it had no notice, actual of constructive, that the complainants were heirs-at-law, and, consequently, none that Ferris and Mrs. Keffer were perpetrating a fraud. That the company did not have actual notice, and that it did not knowingly participate in the deceit, is freely admitted, but that is not enough to absolve it.
The case is to be distinguished from those where a purchaser takes title innocently relying on a decree, regular on its face and in the record, quieting the title. Here the company itself obtained the decree by proceedings instituted in the name of fraud-doers and upon their admittedly perjured testimony, and it cannot have the protection of the decree if, in its procurement, it was, in point of law, put on notice of the fraud and did not reasonably guard against it. Whatever puts a party upon inquiry, amounts in judgment of law to notice, provided the inquiry became a duty, as in case of purchasers and creditors, and would lead to the knowledge of the requisite facts by the exercise of ordinary diligence and understanding. Hoy v. Bramhall, 19 N.J. Eq. 563;Raritan, c., Co. v. Veghte, 21 N.J. Eq. 463. That the company was apprehensive that all was not well with the pretentions of Ferris and Mrs. Keffer would appear by the reservation in its contract of purchase by which it provided that the time for closing should be extended "if upon examination of the title to said lands it became necessary, in the judgment of the attorneys of the party of the second part [the company] to institute proceedings for perfecting the title to said lands." And that it was unwilling to purchase on the word of Ferris and Mrs. Keffer, and was sensible that other heirs might exist, is indicated by the suit it brought to quiet the title. Ferris' claim to ownership as sole heir — a claim not admitting of record proof, and of which it was skeptical, was alone enough to excite inquiry, and had it used ordinary caution it would have discovered the truth and averted the fraud. It would seem that even a casual visit to the neighborhood of the premises in which *Page 556 
Anton Hirschman lived forty-seven years and an interview with one or more of his many neighbors, friends and acquaintances, would have disclosed that he had had sisters, and that sisters' children, other than Ferris, survived; and it is reasonable to suppose that inquiry would have led to their whereabouts. But it made no inquiry at all, except from Ferris and Mrs. Keffer, who were deeply interested and the most likely to deceive them, and in them it seems to have had no over-confidence. That such inquiry is indifferent and futile authorities agree.27 R.C.L. 712. The proof of inquiry made by the attorneys of the company shows that they made some effort among the acquaintances of other unknown heirs of prior owners in title who were made defendants, because the title in that respect was unsatisfactory to ascertain their relationship and addresses, but there is not a scintilla of proof of any kind of search for the heirs of Anton Hirschman. Its absence is striking of the company's absolute reliance on the two conspirators, and the stupid blindness with which it accepted their falsehoods at face value indicates almost a willingness to be duped. It needs no argument or citation of authority to hold that the company cannot claim the status of an innocent purchaser when it had the means to knowledge of the truth before its eyes and within its hearing, and did not use its senses, and the consequences of its misplaced confidence must fall upon it.
No criticism is intended because the company brought the suit agaainst the unknown heirs in the names of the pretended owners, who were in peaceable possession, but it must be regarded as its suit, not their suit, and the company, as suitor and purchaser, must be held as not justified in supinely relying upon the statements of Ferris and Mrs. Keffer, and to be charged with the duty of reasonable diligence to ascertain from other sources, if possible, whether there were other heirs of the record owner, so that they should not be defrauded of their lawful rights. It was its right to shield itself against the claims of other and unknown heirs by decree, but it is not entitled to the protection of a self-procured decree based solely on the perjured testimony of *Page 557 
Ferris and Mrs. Keffer, whose assurances it would not take without the decree and against whose possible deception it failed to guard itself. It is not sufficient that it has a decree based on statutory process, for it must have occurred to the company and its attorneys to whom it intrusted the matter, and whose delinquency is imputed to it, that the published notice to unknown heirs would not result in response and the truth, and that they were merely following formula and not the substance of the statute to foreclose them. The company having assumed to sue in the name of Ferris and Mrs. Keffer, and having recovered against the complainants exclusively on their false allegations and testimony, the falsity of which they could have discovered by reasonable inquiry, it must be held to hold the decree affected by their fraud, and it will be set aside.
The complainants are entitled to recover against Ferris and Mrs. Keffer their shares of the personal property.
On the filing of the bill motion was made to dismiss on the grounds that the complainants' remedy was by an appeal of the decree to quiet the title, and because leave was not first obtained to file a bill of review.
As to the first objection, if the complainants were duly served as absent defendants and they were in default, they had no standing to appeal. New Jersey Building Loan and Investment Co.
v. Lord, 66 N.J. Eq. 344. And further, on appeal, the upper court could only have disposed of the case on the proofs below, and as the record showed title in the complainants in that suit it would have resulted in affirmance. The complainants had the right under the Chancery act (Comp. Stat., p. 416) to move to open the decree within three years after the entry, and while it had that opportunity such an application would not have been helpful. The title had passed to the Consumers Coal and Ice Company and would not have been affected by a reversal. An innocent purchaser for value may rely on and is protected by a decree quieting title, and subsequent proceedings to reverse, modify or annul will not affect his status. Schultz v.Sanders, 38 N.J. Eq. 154. *Page 558 
The bill is an original bill to set aside a decree for fraud in its procurement, and for fraud extrinsic and collateral to matter on which the decree rests, and under which a third party had acquired an interest, and permission to file was not necessary.Story Eq. Pl. (7th ed.) § 426; Mitf. Pl. 138; see Dringer
v. Receiver of Erie Railway, 42 N.J. Eq. 573.