Dringer v. Jewett.

Creveling and Kinnaman. And, beyond refutation, a certain amount of these, in dollars and cents, was to be further secured. It seems to me quite idle to say that such security did not, and could not, apply to those claims, but was only applicable to other claims of George Keyser, because he said, at the negotiations, " If they gave me collateral security *to* the amount," and not *for* the amount.

I will advise a decree according to the prayer of the bill, with costs.

*Mr. Henry S. Harris*, for appellant.

*Mr. Daniel Vliet* and *Messrs. Shipman & Son*, for respondents.

PER CURIAM.

This decree unanimously affirmed for the reasons given by the vice-chancellor.

SIGMUND DRINGER, appellant,

*v.*

HUGH J. JEWETT, receiver of the Erie Railway Company, respondent.

A decree of the court of appeals will not be set aside in chancery for the alleged forgery of certain items in an account book by an agent of the defendant in collusion with the complainant, if the other evidence in the cause, besides such items, is sufficient to sustain the decree, and the applicant be chargeable with laches in attacking the decree for the alleged forgery.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Dringer* v. *Receiver of Erie Railway, 15 Stew. Eq. 573.*

*Mr. Thomas N. McCarter*, for appellant.

This is a bill filed by complainant to obtain relief against a decree in the court of chancery, rendered in conformity with and in pursuance of a decree of this court.

Dringer v. Jewett.

The original suit, in which the decree assailed was rendered, was begun by Hugh J. Jewett, as receiver of the Erie Railway Company, against the appellant, Dringer, and one Henry Bowman; and it was founded on fraudulent collusion between Dringer and Bowman in the purchase and sale of old and waste material of the railway company, by Bowman, as its agent, to Dringer.

Without stating in more detail the object and history of the suit, which is somewhat minutely set forth in the bill, it is enough to say that, after an unusually protracted trial before Vice-Chancellor Van Fleet, the charges of fraud in the bill were held not to have been sufficiently proved to justify a decree, and the bill was dismissed as to both defendants. *Jewett v. Bowman, 2 Stew. Eq. 174.* On appeal to this court, the decree of the vice-chancellor was reversed as to defendant Dringer, and he was found guilty of fraud, and subjected to damages, for the satisfaction of which his property was taken away and sold. *3 Stew. Eq. 291.*

The frauds complained of in the present bill were committed in obtaining the decree of this court last above referred to.

NOTE.—The following cases show when equity will relieve against a judgment or decree obtained by fraud or collusion : where the fraud is not denied, *Lloyd* v. *Mansell, 2 P. Wms. 73;* see *Degraffenreid* v. *Donald, 2 Hen. & Munf. 10; Kent* v. *Richards, 3 Md. Ch. 392;* where the matter afterwards discovered would vary the decree, and, although known to the other party when the decree was obtained, was not discovered to the court, or the other party was not in conscience bound to disclose it then, *Manaton* v. *Molesworth, 1 Eden 18; Dyche* v. *Patton, 8 Ired. Eq. 295;* where a purchaser at public sale of lands involved in the litigation, had himself made the plaintiff in the pending suit, and obtained a decree therein in his own favor by fraudulently concealing from the court certain articles under which complainants claim title to the lands, *Kennedy* v. *Daly, 1 Sch. & Lef. 355;* where a party jointly liable for the payment of the money sued for, paid it to plaintiff, who then called him as a witness, and he, in testifying, suppressed the fact of such payment, *Reed* v. *Harvey, 23 Ark. 44;* where one partner paid part of the claim whereon the firm was being sued, and suppressed that fact from his copartners, who consequently allowed judgment to be taken against the firm for the full original amount, and afterwards paid plaintiff therein more than was actually due on his judgment, *Spencer* v. *Vigneaux, 20 Cal. 442;* see *Crispe* v. *Crispe, 1 Ch. Cas. 23; Thompson* v. *National Bank, 106 Mass. 128; Ritter* v. *Dem. Press Co., 68 Mo. 458; Pearce* v. *Chastain, 3 Ga. 226; Lee* v. *Baird, 4 Hen. & Munf. 453;*

Dringer *v.* Jewett.

The defendant in this bill demurred to it generally, and Vice-Chancellor Van Fleet sustained the demurrer and dismissed the bill. From that decision the present appeal is taken, and, as the facts set forth in the bill are admitted by the demurrer, the only question before this court is whether such facts entitle complainant to any relief.

I. The first and principal item of fraud relied upon by the complainant as a ground of impeaching the decree rendered against him in this court, consists in the use which was made in this court of the Exhibit C 112.

This was a book which purported to contain a record of the weights of material received by the complainant. It was made, and kept by Mills Green, an accountant and book-keeper not in the constant employment of complainant, but employed by him for a short period each day to write up the books of complainant, who was unable to read or write. The complainant never saw the book until after the commencement of the suit, but the book was produced by Mills Green on a subpœna *duces tecum* served upon him by the complainant in the original suit.

*Poindexter* v. *Waddy, 6 Munf. 413;* where a party obtained a judgment by confession by falsely reciting the contents of a draft, which he alleged had been lost, and that, whether such recital was fraudulent or only erroneous, *Beauchamp* v. *McMicken, 7 Mart. (La) N. S. 605;* where a payment which had been endorsed on a promissory note by the payee, was fraudulently erased by the subsequent holder, who thereupon took judgment for the full amount, *Noyes* v. *Loeb, 23 La. Ann. 13, 24 La. Ann. 48;* where the holder of a note, barred by the statute of limitations, and also by the maker's discharge in bankruptcy, by fraudulently combining with two attorneys to collect it for him, obtained a judgment thereon through their fraudulent representations to the maker before the trial, *Huggins* v. *King, 3 Barb. 616; 3 Pom. Eq. Jur. 400 ½ 1364 note;* where the receiver of a corporation, by collusion with the debtor, fraudulently obtained an order to sell a debt due the corporation for a grossly inadequate price, *Hackley* v. *Draper, 60 N. Y. 88;* where, after a trial at law, and only by the witness's death-bed confession, the applicant discovered the perjury of the only witness, on whose testimony the verdict was rendered against him, *Peagram* v. *King, 2 Hawks 295, 605;* see *Smith* v. *Lowry, 1 Johns. Ch. 320; Fabrilius* v. *Cock, 3 Burr. 1771; Vaughn* v. *Johnson, 1 Stock. 173;* which testimony the plaintiff then knew to be false, and which the defendant then had no means of contradicting, *Dythe* v. *Patton, 8 Ired. Eq. 295;* see *Gott* v. *Carr, 6 Gill & Johns. 309;* where testimony within the knowledge of the other

It also appears by this bill that, after the commencement of the original suit, this same Mills Green, while in the employ of Mr. Dringer, was in clandestine correspondence with Mr. Jewett, the receiver, and complainant in the original suit, in regard to Mr. Dringer's accounts, to which Green had access.

That, as a result of such employment of Green by Jewett, Green, between the time of the trial in the court of chancery and the time of the hearing in this court, had altered that book on the first page by falsely entering therein at the bottom of the first page the pretended weight of three wagon-loads of material, as having been weighed on S. & R. (meaning Smith & Rafferty's) scales, amounting to a net weight of thirteen thousand two hundred and eighty-five pounds.

The purpose which this false entry served is made plain in the present bill.

Those fraudulent entries were in Green's handwriting, and were separated from the other entries on the page by a red line drawn at the foot of such previous entries, but in printing said exhibit for use in this court, the red line was omitted, and the exhibit was fraudulently made to appear as if it recorded

party at the trial at law was not discovered by the complainant in time to move for a new trial there, which testimony alters the case materially, *Winthrop* v. *Lane*, *3 Desauss. 310, 325 and note;* see *Hannon* v. *Maxwell, 4 Stew. Eq. 313;* *Kinfong* v. *Hendricks, 2 Gratt. 212;* *Holtz* v. *Schmidt, 44 N. Y. Super. Ct. 327;* *Cox* v. *Mobile R. R. Co., 44 Ala. 611;* *Griffin* v. *Sketoe, 30 Ga. 300;* *Harris* v. *Cornell, 80 Ill. 54;* *Dunlap* v. *Glidden, 31 Me. 435;* *Falls* v. *Robinson, 5 Md. 365;* *Fuller* v. *Little, 69 Ill. 229;* where the witnesses swore falsely by the procurement or connivance of the party who obtained a verdict thereon, *Fisk* v. *Miller, 20 Tex. 579;* see *Tilly* v. *Wharton, 2 Vern. 378;* *Holbrook* v. *Holbrook, 114 Mass. 568;* *Ross* v. *Wood, 8 Hun 185, 70 N. Y. 8;* *Tarquand* v. *Dawson, 5 Tyrwh. 488;* *Dilling* v. *Murray, 6 Ind. 324;* *New York Cent. R. R. Co.* v. *Harrold, 65 How. Pr. 89;* where the facts constituting a defence in the former action were known to an agent of the plaintiff, as well as the plaintiff himself, and defendant, after due diligence, was unable to find such agent, or to obtain his testimony, and went to trial, without asking a continuance, and called the plaintiff as a witness, relying upon his not committing perjury, *Stowell* v. *Eldred, 26 Wis. 504;* see *Harrison* v. *Harrison, 1 Litt. 137;* *Dilly* v. *Barnard, 8 Gill & Johns. 170;* *Dixon* v. *Graham, 16 Iowa 310;* *Croft* v. *Thompson, 51 N. H. 536;* *Turley* v. *Taylor, 6 Baxt. 376;* *Railroad Co.* v. *Neal, 1 Woods 353, 357;* where a party fraudulently procured allowances in his own favor, by withholding his books and papers, from an inspection of which he was conscious

Dringer v. Jewett.

only one shipment, and was untruly stated at the bottom to have been all of that shipment.

It also appears that those entries were made fraudulently, for the purpose of misleading this court, and that Jewett, the receiver, knew of said fraud when he obtained his decree, and had in his possession the evidence that the three loads thus fraudulently entered were no part of the Susquehanna shipment.

On this false and forged exhibit the counsel for complainant urged upon this court that it furnished conclusive evidence of fraud.

The learned vice-chancellor characterized this transaction as a fraud of the most iniquitous character—one of which, he says, it would be difficult to imagine anything more detestable in the way of fraudulent conduct, or more dangerous to the administration of justice. The effect of the fraud is shown in the opinion of Dodd, J., on the appeal in this court as reported in *3 Stew. Eq. 300–302.*

The vice-chancellor failed to give effect to it, however, or to allow it to be the foundation of any relief, on the ground that,

---

the incorrectness of his claim would be made apparent, *Cutting* v. *Carter, 29 Vt. 72;* see *Tomkins* v. *Tomkins, 3 Stock. 512; Blagrave* v. *Bristol Co., 1 H. & N. 369; Jordan* v. *Volkenning, 72 N. Y. 300;* where an administrator, in settling his final account, claimed and was allowed a credit for a payment which he must have known he had never made, *Morrow* v. *Allison, 39 Ala. 70;* see *People* v. *Townsend, 37 Barb. 520; Sheetz* v. *Kirtley, 62 Mo. 417, 420; Pratt* v. *Northam, 5 Mason 95; Vanmeter* v. *Jones, 2 Gr. Ch. 520; Chapin* v. *Waters, 110 Mass. 195; Haskins* v. *Rose, 2 Lea 708;* where the record contains intrinsic evidence of fraud, which the inculpated parties do not explain, *Herndon* v. *Kuykendall, 58 Tex. 341;* see *Byrne* v. *Edmonds, 23 Gratt. 200;* where, by collusion, the seller of chattels entered fictitious sales thereof, *Verplanck* v. *Van Buren, 76 N. Y. 247;* where the executor of a will colluded with the contestants thereof to prevent its probate, *Smith* v. *Harrison, 2 Heisk. 230;* where the attorneys of the contestants of a will, by collusion, abandoned their clients' rights, and consented to its probate, *Hambleton* v, *Yocum, 108 Pa. St. 304;* where a solicitor put in a fraudulent defence for his client, without the knowledge of the client, making admissions on which judgment was obtained against the client, *Williams* v. *Preston, L. R. (20 Ch. Div.) 372;* see *Smith* v. *Abbott, 40 Me. 442; Sheppard* v. *Akers, 3 Tenn. Ch. 215; Sayles* v. *Mann, 4 Ill. App. 516; Mathews* v. *Massey, 4 Baxt. 450; Wandling* v. *Straw, 25 W. Va. 692; Branson* v. *Oregonian R. R. Co., 10 Oreg. 278; Vaughan* v. *Hewitt, 17 S. C. 442.*

to justify the court in acting, it must be made clearly to appear that the judgment or decree has no other foundation than fraud, or, in other words, if there had been no fraud there would have been no judgment or decree. He says: "A simple statement of the ground upon which the jurisdiction in such cases rests, shows that, unless the decree assailed is shown to be the *sole* and direct product of the fraud charged, this court has no authority whatever, either to annul or change it, for its jurisdiction is unalterably limited to the simply undoing of what fraud has done. It is, therefore, clear that if this decree has any other foundation than the fraud here charged, that this court, *even if convinced that the decree is unjust, according to the real right of the case,* cannot disturb it." *15 Stew. Eq. 581.*

I interpret this to mean that, no matter how base and despicable a fraud may have been practiced upon a court in obtaining its decree, unless it went to the whole decree, the party defrauded has no right to relief.

It is respectfully insisted that, in this position, the vice-chancellor fell into a grievous error, for which neither precedent nor authority can be found.

See, also, *Lloid* v. *Maddox, Moore 917; Perry* v. *Meddowcroft, 10 Beav. 122; Flower* v. *Lloyd, L. R. (6 Ch. Div.) 297, 22 Moak 828 note; Riddle* v. *Baker, 13 Cal. 295; Zellerbach* v. *Allenberg, 67 Cal. 296; Briesch* v. *McCaulcy, 7 Gill 189; Gill* v. *Carter, 6 J. J. Marsh. 484; Devoll* v. *Scales, 49 Me. 320; Homer* v. *Fish, 1 Pick. 435, 11 Am. Dec. 218, and note; Greene* v. *Greene, 2 Gray 361; Fish* v. *Lane, 2 Hayw. 342; Blount* v. *Garen, 3 Hayw. 88; Kelly* v. *Mize, 3 Sneed 59; Burgess* v. *Lovengood, 2 Jones Eq. 457; Otterson* v. *Middleton, 102 Pa. St. 78; Crank* v. *Flowers, 4 Heisk. 629; United States* v. *Flint, 4 Sawy. 42; Webster* v. *Reid, 11 How. (U. S.) 437; The Acorn, 2 Abb. (U. S.) 434; Story's Eq. Pl. (8th ed.) §§ 426, 426a; 13 Cent. L J. 102.*

Relief was given against decrees founded on forged instruments, as follows: wills, *Barnesly* v. *Powel, 1 Ves. Sr. 119, 284; Gingell* v. *Horn, 9 Sim. 539; Hudson* v. *Weatherill, 18 Jur. 233;* see *State* v. *McGlynn, 20 Cal. 233, 267; Waters* v. *Stickney, 12 Allen 3; Archer* v. *Meadows, 33 Wis. 166, 37 Wis. 98; Myers* v. *Hanlon, 13 Rich. 196; Gaines* v. *Chew, 2 How. (U. S.) 618; Schouler on Wills § 223;* deeds, see *Summers* v. *Bromley, 28 Mich. 125;* in the name of a surety on a bond, *Brooks* v. *Harrison, 2 Ala. 209;* in the name of the endorser of a promissory note, *Key* v. *Knott, 9 Gill & Johns. 342; Young* v. *Morgan, 9 Neb. 169; Rowland* v. *Jones, 2 Heisk. 321; Douglas* v. *Joyner, 1 Baxt. 32.*

A demurrer to a bill charging fraud, admits such fraud for the purpose of

Dringer v. Jewett.

The statement cited by him, from *Wells's Treatise on Res Adjudicata*, does not support the position.   I fail to see how it has any application whatever to the case in hand.

The general power of this court to set aside a decree or judgment of its own, or of any other court, obtained by fraud, is fully admitted by the vice-chancellor, and is sustained by the most abundant authority.   *2 Pom. Eq. § 919 and notes; Doughty v. Doughty, 12 C. E. Gr. 315.*

In one of the cases cited by the vice-chancellor in this case, viz., *Boulton v. Scott, 2 Gr. Ch. 231,* the fraud complained of did not go to the whole decree, but it consisted in a failure by an administrator to charge himself with a sufficient amount of interest, which, of course, only affected a part of the account.

If the then chancellor (Vroom) had thought that to render the fraud available for relief, it must go to the whole decree, he would not have examined the evidence to determine whether the charge of fraud was true.   He did make such examination, however, and came to the conclusion that the element of fraud was wanting.   The case contains no intimation that if he had discovered the

the argument.  *Bothomley v. Squires, 1 Jur. (N. S.) 694; Large v. Bristol Trans. Co., 2 Ashm. (Pa.) 394; People v. Weston, 3 Neb. 312; Whittemore v. Coster, 3 Gr. Ch. 438, 443; Williams v. Fowler, 2 J. J. Marsh. 405; Craft v. Thompson, 51 N. H. 536; Ross v. Wood, 51 How. Pr. 196, 197, 8 Hun 185, 70 N. Y. 8; Dederer v. Voorhies, 81 N. Y. 153; Bigelow on Fraud 456; Kerr on Fraud 368; Story's Eq. Pl. §§ 639, 644.*

How far the applicant's delay or laches, in such cases, is a bar to relief. *Gore v. Stackpoole, 1 Dow 18; Bandon v. Becher, 3 Cl. & Fin. 479; White v. Tommey, 4 H. L. C. 313; Patch v. Ward, L. R. (3 Ch. App.) 203; Harrison v. Southampton, 4 De G., M. & G. 137; Carew v. Johnston, 2 Sch. & Lef. 280; Thornhill v Glover, 3 Dr. & War. 195; Livingstone v. Acre, 15 Grant's Ch. 610; Guerry v. Durham, 11 Ga. 9, S. C. 12 Ga. 14; Hays v. Urquhart, 63 Ga. 323; Nealis v. Dick, 72 Ind. 374; Shinkle v. Letcher, 47 Ill. 216; Dixon v. Graham, 16 Iowa 310, 312; Hitch v. Fenby, 4 Md. Ch. 190; Holbrook v. Holbrook, 114 Mass. 563; Francis v. Wood, 81 Ky. 16; Bellows v. Stone, 14 N. H. 175, 203; Hunt v. Coachman, 6 Rich. Eq. 286; Jones v. Williamson, 5 Coldw. 371; Byrne v. Edmonds, 23 Gratt. 200; Bronson v. Schulten, 104 U. S. 410; 1 Stew. Dig. "Equity" §§ 173, 1092, 1096, 1097; 3 Stew. Dig. "Equity" § 497; 2 Pom. Eq. Jur. § 917; 3 Pom. Eq. Jur. § 1364 note; Kerr on Fraud 293; 2 Smith's Lead. Cas 609;* and laches may be taken advantage of by demurrer, *Furlong v. Riley, 103 Ill. 628;* see *Deloraine v. Browne, 3 Bro. C. C. 632, 645.*—Rep

fraud he would have refused to give the complainant the benefit of it because it did not reach all the items of the account.

The case of *Cairo and Fulton R. R. Co.* v. *Titus,* decided in this court, and reported in *1 Stew. Eq. 269,* is very instructive on the point now being considered.

There a bill was filed to set aside a judgment of a court of law, on the ground of fraudulent suppression or concealment by plaintiff's attorney of a written instrument, which, if produced on the trial, would have either defeated the whole claim, or, if not, would have greatly reduced the amount recovered. See the opinion of Green, J., on pages 271, 272.

This was followed by the action of this court in the same case, reported in *3 Stew. Eq. 397.*

The subsequent history of that case shows that, notwithstanding the agreement, the plaintiff was permitted to recover $5,000, thus manifesting that the suppressed agreement did not go to the whole case; so that notwithstanding the fraud there was, and would have been, a judgment for part of plaintiff's claim. See *17 Vr. 393, 428.*

To the same effect is the case of *Corneal* v. *Wilson, 3 Litt. 81,* where the fraud complained of was tearing from the bond, on which the suit was brought, a paper which had been annexed, showing sundry payments made on the bond reducing its amount, by means of which plaintiff recovered more than was justly due. The court held complainant entitled to relief, and set aside the judgment, holding that the proper relief in such case was to restore the *status quo* as it existed before the judgment.

The case of *Dederer* v. *Voorhies, 81 N. Y. 153,* is also instructive. This was a suit brought to set aside an assessment for the construction of a road, for the reason (among others) that the commissioners had acted fraudulently in a part of the proceedings by which the assessment was imposed. That case, like the present one, was on demurrer. The court said: "Fraud vitiates all contracts and fraudulent proceedings; and equity, as a general rule, will relieve against all deeds, writings and assurances, also against judgments and decrees, which have been obtained by fraud or imposition. *Willard's Eq. 160.* These alle-

gations do not cover the entire proceedings; but, as they do charge that the commissioners failed to act on the awards, and made a fraudulent and unlawful suppression of the report, and they fraudulently procured the appointment of other commissioners of award, and that the record falsely and fraudulently shows otherwise, we think they made out a case of action in this respect, and the complaint should be upheld on this ground."

Of like character is the case of *Jordan* v. *Volkenning, 72 N. Y. 300.* In that case the fraud complained of did not go to the whole judgment, but it was a case where a judgment of some amount was clearly recoverable. The complaint was " that the said plaintiffs procured said assessment by false, fraudulent and collusive representation and allegation on their part, that the value of the use of said premises mentioned in said complaint was $4,000 per annum, and the referee assessed the damages at that rate, when in truth and in fact the value of the use of the same during the time the said injunction was in force did not exceed about $500 per annum, and that the said false, fraudulent and collusive allegations on the part of said plaintiff were a fraud upon the court." The court said : " There can be no question that a judgment or award obtained by false testimony, fraudulently given by the party benefited thereby, is voidable, and we think that a gross exaggeration of value, knowingly and willfully made, especially in the absence of the adverse party, would be sufficient evidence of fraud to invalidate a judgment or assessment of damages."

In *3 Graham & Waterman on New Trials 1467*, it is said : " The chancellor should compel a new trial at law, when the complaining party shall have shown clearly that he had grounds exclusively legal which he could so far have maintained as to have entitled him to a judgment more advantageous than that of which he complains, if he had had a reasonable opportunity of being prepared on the trial at law."

*State of Michigan* v. *Phœnix Bank, 33 N. Y. 9*, is a very interesting case. That was an action by the state of Michigan to recover back money which had been paid to the Phœnix Bank in pursuance of an award or judgment of a state board

organized to consider and determine private claims against the
state. The ground of the action was that the agent and the
attorney of the bank, who conducted its case before the board,
made false assertions as to the facts on which his client's claim
rested, and concealed other important facts, one of which was
that his clients had actually realized $2,000 on account of their
claim from other sources, which facts, if disclosed, would have
reduced the award by so much. The court did not hesitate to
grant the relief, because the fraud did not go to the whole re-
covery. The case is an interesting one, for it contains a collec-
tion of the English cases, and a vigorous discussion of the whole
subject. On page 27 the court says: "It is needless to multiply
cases showing that the courts upon a bill filed will set aside as a
nullity a decree or award obtained by fraud (citing several cases).
All contracts, instruments and securities and judgments thus
obtained are nullities. The law looks upon them as if they
never had existed; they can neither be justified nor sanctified on
account of the form or character of the security. * * * With
the facts found in this case standing unreversed, with active, pre-
meditated fraud so clearly established, unless courts can repudi-
ate the sentiment that righteousness exalts the administration of
justice, as well as it does a nation, such iniquity should receive
its just condemnation when the aid of the courts is invoked by
the injured party."

In *Byers* v. *Surget, 19 How. 308*, the supreme court of the
United States say: "It is true that with respect to the regu-
larity of that judgment, or of any legal errors in obtaining it,
this court or the circuit court could not take cognizance, nor ex-
ercise any appellate power for its reversal, and in any collateral
attempt at law to impeach that judgment, it must be regarded as
binding and operative. But with any fraudulent conduct of
parties in obtaining a judgment, or in attempting to avail them-
selves thereof, this court can regularly, as could the circuit court,
take cognizance."

One of the most recent utterances of this court on the same
subject is in the case of *Kirkpatrick* v. *Corning, 13 Stew. Eq. 258*,
where Scudder, J., delivering the unanimous opinion of the court,

said : " The strong language applied to cases of fraud is that
' deeds, obligations, contracts, awards, judgments or decrees may
be instruments to which parties may resort to cover fraud, and
through which they may obtain the most unrighteous advantages,
but none of such decrees or instruments will be permitted by a
court of equity to obstruct the requisitions of justice. If a case
of fraud be established, a court of equity will set aside all trans-
actions founded upon it, by whatever machinery they may have
been effected, and notwithstanding any contrivance by which it
may have been attempted to protect them. It is immaterial
whether such machinery and contrivance consisted of a decree
in equity and a purchase under it, or of a judgment at law, or
of other transactions between the actors in the fraud.' "    Citing
*Kerr on Fraud and Mistake 43, 44.*

In the author last cited it is said : " The rule of the court is to
interfere in all cases where the interests of justice call for and
require its interference."    See, also, *Dobson* v. *Pearce, 12 N. Y.
156 ; Pearce* v. *Olney, 20 Conn. 543, 554 ; Davis* v. *Headley,
7 C. E. Gr. 115 ; Peagram* v. *King, 2 Hawks 405.*

The authorities above cited afford abundant precedent for the
relief prayed in this case, even though the fraud may not affect
the whole decree, and when but for the fraud there might still
be some ground of recovery. And in all my research I have
not found a single case, before the present one, in which a court
of equity refused relief in a case of admitted fraud, because the
fraud was not co-extensive with the decree.

The vice-chancellor, in his opinion, practically admits that his
ruling in this respect is without precedent, and claims that it can
be supported on principle. In this, also, it is respectfully con-
tended that he is clearly in error. To allow his doctrine to
become settled law, would hold out a temptation to parties to
experiment with the court. A dishonest man having one good
claim will join with it others that are unjust and illegal, and pro-
cure their allowance by the boldest fraud and forgery, and when
he is detected and called to account, would he be heard to say :
" True, I defrauded the court as to part of my claim, and obtained
a judgment against honesty and conscience, but as my fraud did

Dringer *v.* Jewett.

not affect my whole judgment, a court of equity must hold that I cannot be deprived of the fruits of my dishonesty ? "

Take the case of a suit on a bond or other evidence of debt in which a partial payment has been made, the existence of which the plaintiff fraudulently conceals from the court, and thereby induces it to award him a judgment for more than his due. Could the defrauded party have no relief, because the fraud was only partial and not total ?

An executor, or administrator, or guardian, settling his accounts, mingles with his just claims for allowance other claims which can only be established by gross fraud and perjury. When he has succeeded in procuring a decree for such fraudulent claims, must he be protected in the enjoyment of them, because his whole judgment was not fraudulent ? Even when he admits his rascality, and when the court, in refusing relief against it, is obliged to denounce it " as of the most iniquitous character, one of which it would be difficult to imagine anything more detestable in the way of fraudulent conduct, or more dangerous to the administration of justice ? "

No. When a fraud of this character is boldly avowed, the court will not stop to inquire how far it operated to produce the decree—it will treat it as tainting the whole proceeding.

The same doctrine which this court applied to this present complainant when it found, under the influence of this fraud, that Dringer had fraudulently mingled the railroad company's goods with his own, viz., that the fraud-doer loses the whole, is the true doctrine to apply to this case. The court will not attempt, with a magnifying glass and a pair of tweezers, to go over the whole fabric and pick out the black threads of fraud, but will allow the fraud-doer no benefit of his fraudulent recovery; not, as in the past history of this case, taking all away, but requiring him to again prove his case with all the frauds eliminated from it, and allowing him for so much as he can again establish by honest methods, and requiring him to disgorge all that he gained by his fraud.

II. It is by no means clear that, but for the fraud in question, any decree would have been rendered. The case was a peculiar

one ; most of the facts proved on which the charge of fraud was based were facts of an equivocal character—suspicious, perhaps, but not inconsistent with innocence, or necessarily sufficient to overcome the presumption of innocence to which every suitor is entitled.

Vice-Chancellor Van Fleet, in his opinion (*2 Stew. Eq. 183*), says: " After the most careful and deliberate consideration it is possible for me to give the case, I am compelled to say, I am not satisfied the complainant is entitled to a decree.    There is enough evidence to excite gross suspicions, and to raise painful doubts touching the entire innocence of the relations existing between Dringer and some of the complainant's subordinates, but it requires something more than doubts and suspicions, even if they are painfully harassing, to justify a court in nullifying contracts, and depriving one man of property which he holds by a title apparently valid, and transferring it to another.    Property acquired by fraud should be restored ; but before restoration can be regarded as an act of justice, the fraud must be so clearly proved as to render it certain that restoration is not spoliation. The court must go wherever the proof leads ; to that point it may go fearlessly and with the utmost complacency, but not a hair-breadth beyond."

So, again, in a subsequent proceeding in the same case, reported in *2 Stew. Eq. 199,* he characterizes this case as follows, on page 201 : " While I am entirely satisfied with my judgment, and am sure it is the best it was possible for me to reach, still, I am bound to say the path of duty was not so perfectly clear on all branches of the case that it was impossible to make a mistake. With no distrust, whatever, of the correctness of my conclusion, yet I must confess to a feeling of satisfaction that it is to be reviewed.    The motives which prompt human, action cannot always be discerned with certainty ; it is not always easy to distinguish with precision the line separating innocence from guilt ; and sometimes fraud simulates honesty so closely as to deceive a mind anxious to detect it.    After the most searching scrutiny I was able to make, I have been compelled to declare none of the frauds charged were so clearly proved that a decree in favor of

the complainant would be an act of justice.   But some branches.
of the case are not so entirely free from all suspicion of fraud as
to render it entirely certain that other and keener eyes than mine
may not be able to see what was not perceptible to me."

From the above it is manifest that the character of the case
was one where one well-established case of fraud in the line of
those charged in the bill, would suffice to turn the scale and give
color to all the rest of the case.   The vice-chancellor's opinion
showed the weakness and inconsistency of the complainant's case.
This book, with its fraudulent and forged entries, supplied the
" missing link," and sufficed to make those circumstances, before
regarded as suspicious or doubtful, plenary proof of fraud, as
re-inforced and supported by the proof afforded by Exhibit C
112.   If such practice can be tolerated, the court will find many
cases thus " doctored" and amended on the passage from the
court below to this court.

III. Nor is there force in the suggestion of the vice-chancellor
that the complainant was afforded an opportunity in the account-
ing to correct the evil done by the fraud of the complainant,.
Jewett, as to the three car-loads from Susquehanna.   The vice-
chancellor, in support of his view, states that a large mass of tes-
timony was taken before Master Borcherling, respecting the
alteration of Exhibit C 112, but where is the authority for such
statement?   Certainly not in the bill.   The only allusion to the
proceeding before the master in the bill is on page 26, at line 12,.
and all that is there said is, that he proceeded to take evidence
and depositions in said cause, of and concerning the said matters
therein referred to him.   But where does it appear that it was
referred to him to pass upon the question already decided by
this court, viz., that the book, Exhibit C 112, afforded plenary
evidence of fraud?   What right did the master get to retry
that question?   The opinion of this court, as quoted by the
vice-chancellor himself, demonstrates that, and refers to this
very exhibit.   The vice-chancellor, in another part of his
opinion, says that whether the facts found by the court of
errors are true or false, are questions with which it has noth-
ing to do ;  they have been found, he says, to be true by the

court of errors and appeals, and that finding must be accepted by this court as an unimpeachable finality, and yet he assumes, without the slightest warrant for the assumption, that Mr. Borcherling had authority to, and did retry the question, and even asserts that he reversed this court on that important issue. There is no statement in the bill as to what Master Borcherling did with Exhibit C 112, and the vice-chancellor had no right to, go outside of the bill and call to his aid facts, or supposed facts, not appearing in the bill to support his decision. And if I can be permitted to meet the vice-chancellor's statement by another one equally outside of the bill, I can assert that Master Borcherling held, as he must of course have held, that he had no power to review that finding.

Judge Dodd, in delivering the opinion of this court on that subject, said (*3 Stew. Eq. 300*) that "the instances shown by Exhibit C 112 were insisted on in this court as plenary and demonstrative proof. They were not denied or explained by any suggestions on behalf of the defendants, nor can I see how any explanation avoiding their effect can be given;" and, in the face of such declaration, it would have been the height of presumption on the part of the master to review that finding, and I am at a loss to understand why the vice-chancellor can consider that the master had such authority, when he, at the same time, holds that the court of chancery, which referred the account to the master, is bound to treat the finding of this court as "an unimpeachable finality."

But, if it were true that the master had undertaken to correct, on new proof, the error into which this court was led by the forged exhibit, and had not charged Dringer with this excess in weight (for which there is not the slightest warrant), how could he relieve the present complainant from the effect which the establishment of so gross a fraud must have had on the minds of the judges, as to the other charges of fraud which were doubtful and equivocal, and never would have been allowed but for the aid afforded by C 112? No master's report can possibly wipe that out, or eliminate its effect from the case.

It is respectfully insisted that the fraud committed in this case

is directly within the definition cited by the vice-chancellor from *United States* v. *Throckmorton, 98 U. S. 61.*

IV. The remaining charges of fraud and mistake set forth in this bill refer to the unwarranted statements of Mr. Jewett's counsel, and the unfair use made by him of other exhibits, all of which had a tendency to mislead the court, and which led it into a mistaken view of the testimony that subsequent discoveries have enabled the present complainant to refute and correct. They consist of elaborate computations made by counsel on an erroneous basis.

The misrepresentation of counsel to the vice-chancellor, by which he was induced to admit in evidence a statement prepared by one Gilbraith, which he only admitted on being erroneously assured that the material shipped in the compared shipments was of the same character. This statement was got into the evidence at the close of the case, when there was no time for comparison and examination, and although it had no effect on the vice-chancellor, it did effective work in this court, where it never would have appeared but for such erroneous statement.

The over-estimate of the quantity of the material in complainant's yard, as manifested by Exhibit C 118, which there was no opportunity to correct, because the court had taken all the material away from Mr. Dringer, and put it in the hands of a receiver, was relied on, and furnished one of the strongest arguments in support of the theory of fraud. The actual weight was afterwards found to be so much less, that the whole argument founded on the supposed discrepancy was without actual foundation.

There were other garbled and unfair statements made by counsel, designed and operating to mislead the court. All these are admitted by the demurrer. These charges are dealt with by the vice-chancellor in his opinion.

It is respectfully urged that it will not do for this court to adopt so low a standard of professional ethics as that which the vice-chancellor adopts and excuses, if not justifies.

It is true that " the trial of a cause is an open contest, where each party is at liberty, in the face of his adversary, and accord-

ing to established methods of procedure, to use the utmost skill, learning and ingenuity that he can bring to his aid to convince the court that he is entitled to its judgment." It is also true that "human tribunals can only administer justice imperfectly," but a counsel who comes into court with forged documents and mistaken estimates and erroneous statements, by which he secures the admission of testimony not otherwise admissible, and then so ingeniously and artfully interweaves these instruments of evidence with others as to secure a judgment which is admitted to be against conscience, does not conduct his side of the controversy "in the face of his adversary," nor "according to established methods of procedure," and if, by such means, he obtains a judgment not according to the real right of the case, and which it is against conscience to enforce, the books are full of instances in which such judgments have been set aside, and new trials granted.

This should be particularly the case in proceedings in this court. Judge Dodd's opinion shows that the testimony of over one hundred and eighty witnesses occupied nearly two thousand two hundred printed pages of testimony. In such a case, "the established methods of procedure" in this court render it impossible for the court to give full, careful and minute attention to the details of so great a volume of testimony; and, if it cannot rely on the fairness and good faith of counsel in presenting such evidence to the court, it can never hope to attain safe results; and if, because of such imperfections, counsel take advantage of the occasion, and deliberately mislead the court to render a judgment contrary to the real right of the case, such a judgment, in this court of last resort, will not stand forever, but the court will promptly set it aside.

Taking the allegations of this bill which are admitted by the demurrer (and that is all that either court or counsel can consider), such a judgment is here, and it would be a scandal and reproach to our system if such a flagrant wrong must go without a remedy.

The case of *State of Michigan* v. *Phœnix Bank*, above cited from *33 N. Y. 9*, was one where the misrepresentations were entirely those of counsel in presenting the case.

Fraud and imposition annul the whole judgment or decree in

the consideration of courts of equity; and, when a decree has been so obtained, the court will restore the parties to their former situation, whatever their rights may be.    *Story's Eq. Pl.* § *426 and notes.*

This case is greatly aggravated by the fact that the fraud-doer is a receiver of the court of chancery, who enters into a secret and fraudulent correspondence with complainant's clerk, which results in the commission of the fraud in question.    Being an officer of the court, he was, of all others, bound to act in the utmost good faith, and a just court will hold its own officer, in the discharge of his official duties, to a much stricter rule than it will apply to an ordinary suitor.    The money obtained by this fraudulent judgment was, for the time being, the money of the court, and it will not allow itself to become, even remotely, a participant in such a nefarious transaction.

*Mr. Cortlandt Parker,* for respondent.

This case came before the court of chancery upon a demurrer to the relief prayed for by the bill of complaint.    The defendant, for cause of demurrer, showed " that the complainant had not, in and by his said bill, made or stated such a case as entitled him, in this honorable court, to any discovery from this defendant, or to any relief against him, as to the matters contained in the said bill, or any of such matters."

The effect of this demurrer is first to be noticed.

" Where a defendant demurs to a bill for want of equity, he is not to be taken to have confessed the truth of the statements and charges.    He only admits them for the purpose of showing the want of equity, even upon the assumption that the statements and charges in the bill are true.    All that he says by a demurrer is this : " Even admitting (just for the sake of argument), upon your own grounds as to the existence of the equity which you assert, that all you say is true, still you have no equity.    Without putting myself to the trouble, expense and delay of disproving your allegations, but taking you on your own grounds, I can show that you have no equity against me."    *Thompson* v. *Bar-*

.clay, 9 L. J. (O. S.) 216, 217; Mitford & Tyler's Pleading (ed. 1876) 305.

The allegation in the text-book (page 306) that, on a demurrer to the whole bill, the whole is taken for true, is qualified by the note, which says: "That is, everything necessary to support the plaintiff's case which is well charged in the bill. 4 Ves. 426, 427; 1 Ves. Jr. 289. Facts on a demurrer are taken to be true —that is, facts which are well and materially alleged." Lord Hardwicke, 1 Ves. Jr. 78, 289. By demurring to the bill the defendant does not admit charges of fraud contained in it. Nesbitt v. Berridge, 9 Jur. (N. S.) 1044.

The same restrictions upon the general principle are stated in New Jersey decisions. See citations in Hartshorne 480. And in Pat. & Hudson Co. v. Jersey City, 1 Stock. 437, the important addition to ordinary language is made that "if the fact is stated anywhere in the stating part of the bill with legal certainty, and is material, it is well pleaded and therefore admitted by the demurrer." And in Redmond v. Dickinson, 1 Stock. 516, it is said, referring to allegations in a bill of complaint to which there was a demurrer: "Though the bill alleges it as a fact that the check was paid, and then proceeds to detail the manner and circumstances of its payment, if those circumstances appealed to to show its payment do not establish the fact, the allegation amounts to nothing."

Where the statement is simply one of opinion, the demurrer does not admit its correctness. Where the statement is of information and belief, the demurrer admits only what is said—that he is so informed and so believes. In these instances there is no precise allegation. The statement is not well pleaded. Arguments are not admitted to be correct, nor inferences. Therefore, when it is "submitted to the court" that a thing is thus and so, there is no admission in the demurrer.

Nor, it is insisted, are charges admitted. These are replies to defences, and form no part of the groundwork of the suit. What is admitted is only the stating part of the bill. Statements are usually made by the words, "Your orator shows." Farren's Bill in Equity 9.

With these preparatory observations let us examine the bill in question and see if, on its statement, there is equity for the relief prayed. That relief, be it observed, is that defendant may account and pay him the full value and price of his property, of which he was unjustly deprived through his fraud and misrepresentations, and to pay all the loss suffered through the stoppage of his business by the wrongful act of the defendant, and his expenses in contesting said unjust cause, and for other relief.

The bill states—

The receivership of defendant.

His filing, as receiver, a bill of complaint against complainant and one Henry Bowman, purchasing agent under the receiver, charging them with fraud in the sale and purchase of car wheels. That Bowman answered, and so did the complainant.

That afterwards Jewett filed his petition, alleging greater indebtedness by Dringer than he had admitted by his answer, and made five other charges, from which fraud in procuring material from the receiver or from the company might be inferred, and that he prayed for and obtained a receiver, notwithstanding his answer made to such petition.

That, about November 1st, 1876, Mr. Jewett filed an amendment to his bill, in which he charged the complainant, in.connection with several employees of his, besides Bowman, with fraud, committed in regard to a large variety of waste material, and through a long space of time, in two ways—by obtaining larger weight thereof, and by obtaining. material of greater value than what he accounted for; that issue was taken upon these charges and a trial took place, upon which ninety-eight witnesses were sworn for the complainant, and eighty-three for the defendants.

That thereupon the vice-chancellor dismissed the bill, whereupon appeal was taken, upon which a reversal was decreed by the court of appeals, and defendant was held guilty of fraud as charged; the decree was remitted, a new decree in accordance therewith made by the chancellor, and a reference was thereupon had to a master to report the amount in money due by reason thereof, whereby complainant says said decree became or stood as the decree of said court of chancery.

Dringer *v.* Jewett.

Appellant then shows that, after the argument in this court, his attention was particularly called to Exhibit C 112 for complainant, a " small weight-book," kept by one Mills Green, who was employed to write up appellant's accounts; that the book was produced on a *duces tecum* by Green, and put in evidence by complainant; that he and his counsel, only after the argument in the court of appeals, discovered that the book had been untruly kept.    He alleges how, and " charges and insists " that items at the end of a page specified were not there entered at the time the rest were, but were made after the book was marked as an exhibit in the cause, in pursuance of a conspiracy entered into between Green and Mr. Jewett.    This charge of conspiracy he bases upon having learned, since the argument in the court of appeals, that Green and Mr. Jewett were in communication before and after the bill filed; that many letters passed between them (he shows two from Jewett, and another which never went, but was intended to go, which he obtained under circumstances stated). The use of this book in the court of appeals is one and the chief complaint.

The second is unfair argument of the cause there.

Of this last, disposition may as well be shortly made at once.

That the counsel for one side or another of a case made a mistaken, or even an unjustifiable, use of the evidence—taking and maintaining wrong views of it, and doing his best to persuade a court or jury that his client's cause is right—is so common an error, if it be one, that the making it a reason for setting aside the judgment of the very highest court in the state, even, is certainly a very novel effort.    The worst epithet applied in the bill to the conduct of counsel is characterizing it as " mean," of which it is only necessary to say that it does not necessarily impute even injustice.    There would be few final verdicts or judgments if excessive zeal of counsel, misapprehensions or misrepresentations by them of evidence, or any other want of perfect regard for the rights of the opposite party could furnish ground for new trials, much less for the relief which is prayed for in this very remarkable bill of complaint.

Recurring to the alleged conspiracy of Mr. Jewett and Mills

46

Green, and its alleged execution by means of forgery in Exhibit C 112, let us remark:

That the facts alleged as proving conspiracy are utterly insufficient to sustain any such charge. Note that the charge is not only conspiracy, but conspiracy to be executed, and actually successful, by making false entries in this little " weight-book."

What are these facts? He has learned (he does not state the fact to be so, nor even that he believes) that Mr. Jewett and Mills Green were in constant communication before and after the bill filed; that he has copies of two letters from Mr. Jewett, which he gives, and also a letter written, but not sent, from Green to him. These letters, C and D, show kindness to Mr. Dringer, and reveal a hope, through him, of discovering if any officer of the Erie had disregarded his duty. The second letter (Exhibit D) seems to have been given to Mr. Green. It is addressed to " Mills Green, present,"—April 6th, 1876. The letter *from* Green is dated April 4th, 1876. It promises to be down in a day or two. It refers to something which it is unpleasant to make out. It is evidently in answer to that of the day before. Quite evidently no injury of Mr. Dringer was thought of; only discovery of unfaithful officers. Dringer's suspicions seem to have been awakened that *he* might be injured. His counsel said that he was unjust; premature, at least. We hear nothing of them again till the filing of this bill, June 17th, 1885—over nine years afterwards. There is no inkling here of the fraud through the book which, according to the bill, Mr. Jewett and Mr. Green had conspired to perpetrate. And yet this is all which is adduced in anywise to fasten Jewett and Green together. Now, if Mr. Jewett was not privy to the fraud—if fraud there were—if that sprang from the brain of Mills Green alone; if he made false entries in the book, which tended to show that Dringer had practiced false weighing at Susquehanna, what can be said? Is it any reason why all that has been done should be continued—why the relief of return of the money should be given?

The book was produced under a *duces tecum*. It was offered in evidence by complainant, but no use was made of it before the vice-chancellor. The use made of it before the court of appeals

"was a complete surprise" to the appellant.  Quite probably. No doubt its contents were forgotten.  The *duces tecum* was to bring all Mr. Dringer's books, therefore this came as well as the rest.  No examination as to the contents of said book was made in the cause by complainant; no intimation as to its use was given (of course not), but counsel for Dringer did examine Green as to and concerning an erasure in the same.  And he refers to the printed testimony.  From all which it plainly appears that no conspiracy existed, nor even any knowledge by counsel for Mr. Jewett, that the book could serve them.  The original book was before the court of appeals.  "Only afterwards" was the discovery made that it had been (not fraudulently but) untruly and incorrectly kept.  Some entries were added after the others. It is his opinion, he "*charges*," that these three items to which he excepts were entered long after the others, and after the book had been marked as an exhibit.  This is not the "stating" part of the bill.  The orator does not "show" that.  He says he "cannot read or write."  · The demurrer admits nothing which merely stands on his *suspicion* or his *belief.*

The fact of mistake, if it occurred, could not justify either a new trial or other relief.  That Mills Green, out of personal motives, induced the mistake, could not.  That counsel used the evidence as it existed, to promote the result for which he labored, could not.  A new trial could only be had when the successful party was in fault.  Then it must be sought immediately upon discovery.  The application is in the nature of one founded on newly-discovered evidence.  Such relief as that prayed could never be had.

Hence the demurrer was rightly allowed, and the bill rightly dismissed.

The bill in question may have been suggested by the concluding sentences of the opinion of chancery in *Jewett* v. *Dringer, 4 Stew. Eq. 594:* "This court will be open to him whenever he can come here with an original bill, exhibiting a state of facts which renders it plain that it will be against conscience and right to let his adversary execute his judgment, and that it was not

Dringer *v.* Jewett.

possible for him, by the exercise of ordinary care and diligence, to have discovered those facts sooner."

That decision was in October, 1879, upon a petition filed in that year. The complainant, Dringer, slept more than five years prior to the filing of the bill in the cause—more than years after the decree which he seeks to overthrow. And he delays five years and over after the opinion which told him by what method, if at all, he could get the relief he claimed. This is a case of laches, too clear to be doubted or denied.

The opinion of the vice-chancellor argues the case with a fullness and thoroughness which throw the suggestions here made into disrepute. What is said is intended to be additional to the views he has expressed, with which it is not doubted this court will concur. It will be deplorable if the case of *Jewett* v. *Dringer* should be again opened. It has already lasted eleven years. It is time that it was at an end.

The opinion of the court was delivered by

BEASLEY, C. J.

This court is of opinion that the laches of the appellant in seeking a remedy for the alleged frauds of which he complains was so great as of itself to justify the decree against him in the court of chancery. It has not been thought necessary to consider the appeal in any other aspect.

Let the decree be affirmed.

*Decree unanimously affirmed.*