43 N.J. Super. 35 (1956)
127 A.2d 576
BROOKCHESTER COMMUNITY ASSOCIATION, INCORPORATED, PLAINTIFF-APPELLANT,
v.
BROOKCHESTER, INC., SECTIONS 1 to 10, INCLUSIVE, EACH "SECTION" BEING A SEPARATE CORP. OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 1956.
Decided December 13, 1956.
*36 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. James A. Major argued the cause for the appellant.
Mr. Walter D. Van Riper argued the cause for the respondents (Messrs. Van Riper & Belmont, attorneys; Mr. Paul N. Belmont, of counsel).
The opinion of the court was delivered by FRANCIS, J.A.D.
The plaintiffs instituted a rather novel injunction action in the Chancery Division. The complaint recites that between 1948 and 1950, the defendants, Brookchester, Inc., Sections 1 to 10 inclusive, each "Section" being a separate corporation, built a certain housing project in New Milford, New Jersey, pursuant to the provisions of Section 608 of the National Housing Act, 12 U.S.C.A., *37 § 1743 (1945). It alleges also that funds used in the construction work came from mortgages which were insured by the Federal Housing Administration; further, that the rents to be paid by tenants were fixed by the Federal Housing Administrator (now Commissioner; 12 U.S.C.A., § 1702 (Supp. 1955)), and thereafter on March 31, 1954 increased with his approval, as provided by the act. It charges that the increase in rents was obtained by fraud practiced upon the Administrator through misrepresentations made by defendant corporations that the building costs "were far in excess of the actual cost," that to permit collection of them would be inequitable, and that no provision exists under the Federal regulations for review of their validity. The individual plaintiffs as tenants sought judgment enjoining defendants from collecting the increases "unless and until the defendants shall, in good faith, call to the attention of the Federal Housing Administration the fraudulent representations made by them to [it] concerning the actual cost of the erection of the * * * dwellings, and ask the * * * Federal Housing Administration to reexamine the defendants' application for an increased rental based on the actual facts * * *." The alleged fraud was not specified beyond what has been stated. See R.R. 4:9-1.
Defendants moved to dismiss the complaint for lack of jurisdiction. The motion was granted on the ground that the action was premature since (admittedly) no proceedings had been brought in the federal agency to vacate or void the increase order.
On this appeal it is undisputed that the Housing Commissioner has the statutory authority to set maximum rentals for these housing accommodations. See: Brookchester, Inc., v. Ligham, 17 N.J. 460, 465 (1955); 12 U.S.C.A. § 1743(b) (1) (1945). Such rentals are adjusted by him so as to provide moderate rentals and a reasonable financial return to the investor. Stuyvesant Town, Inc., v. Ligham, 17 N.J. 473, 480 (1955). The return contemplated has a broad connotation. The Housing Administration has insured the mortgage on the project, the principal sum of which is not permitted to exceed 90% of *38 "the amount which the Commissioner estimates will be the necessary current cost of the completed property or project, including the land; the proposed physical improvements; utilities within the boundaries of the property or project; architects' fees; taxes and interest accruing during construction; and other miscellaneous charges incidental to construction and approved by the Commissioner: Provided, That such mortgage shall not in any event exceed the amount which the Commissioner estimates will be the cost of the completed physical improvements on the property or project, exclusive of off-set [off-site?] public utilities and streets, and organization and legal expenses: * * *." 12 U.S.C.A. § 1743(b) (3) (B) (Supp. 1955). (Emphasis added.)
So the Commissioner, having exposed the government to liability as an insurer in a sum based upon his cost of construction or replacement estimates, fixes the quantum of the rentals with an eye to the proper and reasonable amortization of the mortgage debt as well as to a fair return to the owner and reasonable rents for the tenants. Justice Heher put it this way in his dissent in Stuyvesant Town, Inc., v. Ligham, 17 N.J. 473, 487, 488, 111 A.2d 744, 752:
"The regulation of the rent ceiling for accommodations afforded by housing projects financed by Government-insured mortgages under the National Housing Act, 12 U.S.C.A., section 1743, is committed to the Federal Housing Commissioner for a reasonable containment of the rental charges and the amortization of the Government's mortgage security; and there can be no state interference with the fulfillment of what has been made exclusive federal policy.
The federal act, section 1743, also 1713(b), empowers the Commissioner to regulate and restrict rents, rate of return and methods of operation; and the corporate structure itself is so molded and conditioned. The Government's reserved rent control has the threefold object of providing reasonably priced tenancies yielding also a fair return to the operator of the housing facility, and the Government's exonerative protection under its insurance undertaking, all to serve an urgent essential public need.
Thus, by preemption, rent control itself becomes to this extent the Government's exclusive province. * * *"
Accord Fieger v. Glen Oaks Village, Inc., 309 N.Y. 527, 536, 132 N.E.2d 492, 496 (1956).
Thus, broadly speaking, Congress must be said to have been interested in an economically sound rental structure. In establishing such a structure through rental ceilings, the Commissioner is necessarily motivated by three factors, amortization of the insured mortgage, fair return for the *39 owner, and, in the light of these two, reasonable rental rates for prospective tenants. A consideration which must exert considerable influence in reaching his conclusion is that the amount of the mortgage bears a direct relation to his own estimate of construction or replacement costs of the housing accommodations. And, of course, it is impossible to know what facts brought about the increased rental order. It may even be that the size of the mortgage reflects misrepresentations of the owner as to construction costs. Yet in the judgment of the Commissioner the rent schedule promulgated by him may be necessary to amortize the mortgage and thus protect the Government from loss as an insurer. Whether, if satisfied that he had been induced to fix rents through misrepresentations as to such costs, he would order a reduction thereof, so as to have the actual costs reflected in the rate of return to the owner, is a matter concerning which we can only conjecture at this time.
Defendant owners argue that these matters are committed exclusively to the control of the Commissioner and that the state courts have no jurisdiction to interfere. In doing so, reliance is placed upon the analogous case of Fieger v. Glen Oaks Village, Inc., supra. There, tenants alleged that the owner practiced fraud on the Administrator of the same type as that charged in the present complaint, as the result of which unreasonable rents were fixed by him. On this basis, they sought damages against the owner. The Court of Appeals sustained the action of the trial court in dismissing the complaint, saying [309 N.Y. 527, 132 N.E.2d 494]:
"There are two different but equally conclusive reasons why this complaint cannot stand. The first of such reasons is that these allegedly excessive rentals were fixed by the Federal Housing Administrator or Commission * * *. Such a determination of the F.H.A. authorities represents Federal governmental action by authorized Federal officers. As made clear by Wasservogel v. Meyerowitz, 300 N.Y. 125, 89 N.E.2d 712, Schmoll, Inc., v. Federal Reserve Bank, 286 N.Y. 503, 37 N.E.2d 225, 138 A.L.R. 1187, and older cases, the State courts have no power whatever to revise such official acts performed by Federal officials under authority of acts of Congress. In the Wasservogel case, supra, this court said flatly that when Federal authorities and Federal officers acting within their authority have fixed rents, the State courts may not in any manner revise or review those determinations, directly or *40 indirectly, and that all State court action is forbidden when it would amount to `an assertion of control of the manner in which the Federal rent office performed the function assigned to it by Congress' * * *. We see no escape from that here. The Federal Housing Act, as above stated, authorized the Administrator, `in his discretion' (see § 608, subd. [b], par. [1]), to regulate rents. So empowered, he adopted rule or regulation section 280.30 under which he established maximum rents for these and similar properties. The maximum rents so established by him are still in effect and there is no assertion that the rents charged by defendants to these tenants were in excess of those maxima. [Compare Brinkmann v. Urban Realty Co., 10 N.J. 113 (1952).] We will assume with plaintiffs that this maximum rent fixation was for the benefit of tenants. There is nothing in that concept, however, which changes the settled law that the State courts cannot revise such an act of the Federal Government but must take heed of it and abide by it until it is changed by procedures, if any, established for such change. * * *." (Insertion ours; emphasis added)
The opinion in the Fieger case pointed out also that the fraud alleged was not perpetrated against the tenants but against the United States in order to cause the Commissioner to take certain legislative action with respect to rents. And it went on to say therefore that
"[the] plaintiffs cannot have any relief in the courts unless and until they are able in some fashion to set aside the rent schedules or unless some legislative body, such as the United States Congress, provides them with a remedy by suit."
The plaintiffs in our case apparently have taken this ruling to signify that they have no remedy at all against the rent order itself, either in the courts, state or federal, or in the administrative agency. We infer that their form of action to compel defendants to reveal the alleged fraud to the Commissioner and to seek a reexamination of the application to increase the rents, was stimulated by the dissenting opinion in the Appellate Division in the Fieger case. 285 App. Div. 814, 136 N.Y.S.2d 539 (1955). And they have attempted to buttress the suggestion found therein by reference to the equitable doctrine long recognized in New Jersey that the Chancery Division has inherent power to restrain the enforcement of a judgment obtained by fraud. Gray v. Cholodenko, 34 N.J. Super. 190 (App. Div. 1955); Second National Bank v. Thompson, 141 N.J. Eq. 188 (Ch. 1947) *41 Dringer v. Receiver of Erie Railway, 42 N.J. Eq. 573 (Ch.) affirmed sub nom. Dringer v. Jewett, 43 N.J. Eq. 701, 724 (E. & A. 1887); Doughty v. Doughty, 27 N.J. Eq. 315 (Ch. 1876), affirmed 28 N.J. Eq. 581 (E. & A. 1877).
On the state of the record before us, we do not feel called upon to say whether the courts of our State have no jurisdiction whatever to afford a remedy to plaintiffs or whether any recourse is open to them in the federal agency. The fact remains (and it was conceded at oral argument) that they have not undertaken formal proceedings of any kind before the Commissioner and he is not a party to this suit. Congress has granted him authority to make rules and regulations to accomplish the overall purpose of the legislation, an integral part of which is to fix reasonable rents. 12 U.S.C.A., §§ 1742, 1743(b)(1) (1945). The power to fix rents manifestly implies the power to revise them as the circumstances justly demand, either on his own motion or on that of an interested party. No regulation or ruling of the Commissioner or of the federal courts has been cited to us to the effect that he either cannot or will not act in such case.
Irrespective of questions of jurisdiction or of preemption, and thinking merely in terms of comity at this stage of the controversy, we hold the view that the state court should not intervene. The elements, already spoken of, which enter into the Commissioner's decision as to the amount of rents, as well as the usual and natural assumption that he will fully discharge his duty within the limitations of his statutory power, all impel us to the conclusion that plaintiffs not having formally invoked and exhausted his jurisdiction, the trial court was justified in dismissing the complaint.
Whether in cases where fraud is established, citizens of this State who become tenants of such projects are entirely without equitable remedy against an owner whose rents provide him with a return over and above that necessary to protect the Government, need not be declared at this time. See Choy v. Farragut Gardens, 131 F. Supp. 609, 614 (D.C.S.D.N.Y. 1955).
The judgment is affirmed.